| | | |
|---|---|---|
| FLORIDA COASTAL SCHOOL OF LAW, INC.; and INFILAW CORPORATION, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:18-cv-00621-BJD-JBT |
| AMERICAN BAR ASSOCIATION; COUNCIL OF THE SECTION OF LEGAL EDUCATION AND ADMISSIONS TO THE BAR, AMERICAN BAR ASSOCIATION; and ACCREDITATION COMMITTEE OF THE SECTION OF LEGAL EDUCATION AND ADMISSIONS TO THE BAR, AMERICAN BAR ASSOCIATION | ) ) ) ) ) ) ) ) ) ) ) | Hon. Brian J. Davis |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY AND SUPPORTING MEMORANDUM OF LAW**

# TABLE OF CONTENTS

BACKGROUND .......................................................................................................3

    A.    The Council and Committee's Role as Accreditors. ....................................3

    B.    The Committee's Decision and Coastal's Pending Appeal to the Council. ................................................................................................................4

STANDARD OF REVIEW ...................................................................................7

ARGUMENT ..........................................................................................................8

    I.    Coastal's Claim Is Not Ripe. ........................................................................8

        A.    It Is Premature to Evaluate Coastal's Due Process Claim Where the Available Process Has Not Yet Concluded. ...................................10

        B.    Coastal Will Not Suffer A Hardship By Awaiting the Decision of the Council. ....................................................................................13

    II.    Coastal Fails to State a Claim for Common Law Due Process Where It Has Not Completed the Process and the Council Has Not Rendered a Decision. ................................................................................17

    III.    In the Alternative, This Court Should Stay Proceedings Pending Conclusion of the ABA Appeal and the ABA's Motion to Consolidate Cases Pursuant to 28 U.S.C. § 1407. ....................................19

CONCLUSION.....................................................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Alps S., LLC v. Ohio Willow Wood Co.*,
   No. 8:09-CV-386-T-EAK, 2011 WL 899627 (M.D. Fla. Mar. 15, 2011)..................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................7

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*,
   572 F.3d 1271 (11th Cir. 2009) ........................................................................7

*Casey v. Fla. Coastal Sch. of Law, Inc.*,
   No. 3:14-CV-1229-J-39PDB, 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015)..........14

*Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*,
   39 F. Supp. 2d 889 (W.D. Mich. 1998) .........................................................12

*Free Enterprise Fund v. PCAOB*,
   561 U.S. 477 (2010).........................................................................................11

*Hedberg v. Actavis Grp.*,
   No. 810-CV-592-T-33TBM, 2010 WL 963196 (M.D. Fla. Mar. 16, 2010)...............21

*Hiwassee Coll., Inc. v. S. Ass'n. of Colls. & Sch.*
   531 F.3d 1333 (11th Cir. 2008) ...................................................16, 17, 19

*Kazal v. Price*,
   No. 8:17-cv-2945-T-23AAS, 2017 WL 6270086 (M.D. Fla. Dec. 8, 2017) ..............15

*In re Law Sch. Accreditation Litig.*,
   MDL 2855 (J.P.M.L. May 30, 2018)...............................................................2,3, 20

*Lincoln Mem'l Univ. Duncan Sch. of Law v. Am. Bar Ass'n*,
   No. 3:11-CV-608, 2012 WL 1108125 (E.D. Tenn. Apr. 2, 2012)............................20

*Lincoln Mem'l Univ. Duncan Sch. of Law v. Am. Bar Assoc.*,
   No. 3:11-CV-608, 2012 WL 137851 (E.D. Tenn. Jan. 18, 2012) .........................9, 11

*Makro Capital of Am., Inc. v. UBS AG*,
   543 F.3d 1254 (11th Cir. 2008) .....................................................................3, 8

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*,
    937 F. Supp. 435 (E.D. Pa. 1996), *aff'd*, 107 F.3d 1026 (3d Cir. 1997)......................15

*Maxcess, Inc. v. Lucent Techs., Inc.*,
    433 F.3d 1337 (11th Cir. 2005) .....................................................................................3

*Peterson v. Avantair, Inc.*,
    No. 8:13-CV-1683-T-33-EAJ, 2013 WL 4506414 (M.D. Fla. Aug. 23, 2013).......8, 19

*Pittman v. Cole*,
    267 F.3d 1269 (11th Cir. 2001) ......................................................................... *passim*

*Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colls.*,
    781 F.3d 161 (4th Cir. 2015) ...........................................................................12, 17, 19

*S. Cal. Inst. of Law v. Biggers*,
    613 F. App'x 665 (9th Cir. 2015) ................................................................................16

*Staver v. Am. Bar Assoc.*,
    169 F. Supp. 2d 1372 (M.D. Fla. 2001) ............................................................ *passim*

*Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*,
    459 F.3d 705 (6th Cir. 2006) ...........................................................................12, 17, 18

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994)......................................................................................................13

*United States v. Illinois Cent. R. Co.*
    291 U.S. 457 (1934)......................................................................................................13

*Weinberger v. Salfi*,
    422 U.S. 749 (1975)................................................................................................11, 13

*Zavaletta v. Am. Bar Ass'n*,
    721 F. Supp. 96 (E.D. Va. 1989) ................................................................................15

**Statutes**

28 U.S.C. § 1407..............................................................................................2, 19, 20

**Rules and Regulations**

34 C.F.R. § 602 ...............................................................................................................3

59 Fed. Reg. 22250 (Apr. 29, 1994) ..............................................................................3

iv

Federal Rule of Civil Procedure 12(b)(1) .................................................................1, 3, 7, 8

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................7

Defendants the American Bar Association (the "ABA"), the ABA's Council of the Section of Legal Education and Admissions to the Bar ("the Council"), and its Accreditation Committee ("the Committee") (collectively, the "ABA") hereby move to dismiss Florida Coastal School of Law, Inc.'s and InfiLaw Corporation's (collectively, "Coastal" or "the School") Complaint without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) because Coastal's claim is not ripe for review. Coastal's Complaint should also be dismissed without prejudice under Rule 12(b)(6) because Coastal cannot state a common law due process claim where the process on which it centers its claim is not yet complete and there has been no decision by the Council.

Coastal's Complaint challenges the April 27, 2018 decision of the Committee concerning Coastal's compliance with ABA Standards. (*See* Compl., Dkt. 1 ¶ 1.) The ABA's Rules give Coastal the opportunity to appeal the Committee's decision to the Council, and Coastal has done so, recently filing a 135-page appeal. (Dkt. 1 ¶ 107.) That appeal will be considered at the Council's August 2, 2018 meeting. Under ABA Rules, the Council may affirm, amend, reverse, or remand the Committee's decision.

Yet, rather than allow the ABA's internal process to run its course, Coastal has filed this action seeking a determination that the ample procedure the ABA has provided and is still providing fails to satisfy the standards of common law due process. In other words, Coastal asks this Court to render a decision that the ABA has violated Coastal's right to common law due process *while the ABA is in the middle of affording Coastal additional process.*

The Court cannot review the extent of procedural protections the school has been afforded (or not afforded) before the Council renders a decision on appeal. *See Staver v. Am. Bar Assoc.*, 169 F. Supp. 2d 1372, 1377 (M.D. Fla. 2001) (finding that because Barry School of Law's application was still pending before the Council, "the Plaintiffs' claims are not ripe"). Under well-settled case law, this Court's review of accreditation decisions is extremely limited: the Court may assess only (1) whether the Council and Committee have provided fair process, and (2) whether the accreditation action is supported by substantial evidence. The Court cannot make either of these assessments adequately before the Council has entered its decision. It cannot assess the process that has been afforded to Coastal before the process is complete, and it cannot assess whether substantial evidence exists to support a decision which is still under consideration by the ABA. The motion should be dismissed without prejudice.

In the alternative, the ABA requests that this Court stay the proceedings pending conclusion of Coastal's appeal to the Council. A stay is warranted not only for the reasons that support dismissal but also for the conservation of judicial and party resources. A stay is further warranted because there is a fully briefed motion to consolidate pretrial proceedings in this case and two others pursuant to 28 U.S.C. § 1407 that will be heard later this month. *See* Mot. for Consolidation of Law School Accreditation Actions, *In re Law School Accreditation Litig.*, MDL 2855 (J.P.M.L. May 30, 2018).

# BACKGROUND

## A. The Council and Committee's Role as Accreditors.

The ABA is a not-for-profit voluntary professional association. It has published standards for legal education and a list of ABA-approved law schools that meet those standards since 1921. (ABA Standards and Rules of Procedure, Dkt. 30-1 at 6.)[1] Since 1952, the U.S. Department of Education has designated the Council as the national accreditor for programs leading to the J.D. degree. (*Id.*; 34 C.F.R. § 602.) In that role, the Council is responsible for determining whether law schools "provide students with quality education or training worth the time, energy, and money they invest in it." 59 Fed. Reg. 22250 (Apr. 29, 1994).

The Council adopts Standards for Approval of Law Schools (the "Standards"), which set out criteria for ABA accreditation, as well as Interpretations and Rules of Procedure that govern the accreditation process. (Dkt. 30-1 at 8.) "The Council has primary authority to determine compliance with the Standards," but has delegated certain authorities to its Accreditation Committee, including the authority to determine "compliance with the Standards of any provisionally or fully approved law school." (Dkt.

---

[1] For a Rule 12(b)(1) motion, a district court is not restricted to the allegations of the complaint. *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008) (when considering dismissal under Rule 12(b)(1), a court "may consider extrinsic evidence such as testimony and affidavits"). For a 12(b)(6) motion, a court may consider "a document outside the four corners of the complaint . . . if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005). The Standards and the Committee's decision on which Coastal bases its Complaint are expressly referenced in, and central to, the allegations of the Complaint. These documents are also undisputed in their authenticity. Therefore, the Court may properly consider these documents on a motion to dismiss.

30-1 at 66-67 (Rules 2, 3(b).) By accrediting a school, the Council states to the public that the school is in compliance with the Standards.

The ABA has established a multi-level process for review of accredited law schools. As part of that process, a law school "has a right to appeal a decision of the Accreditation Committee" to the Council. (Dkt. 30-1 at 73, 78 (Rules 15, 23).) Once the appeal is received, the Council "shall consider the appeal promptly and, when feasible, at its next regularly scheduled meeting." (Dkt. 30-1 at 78 (Rule 23(b)).) During an appeal, the Council considers: (1) the record before the Committee on which the Committee based its decision or recommendation; (2) the letter setting forth the Committee's decision or recommendation; (3) the written appeal by the law school; (4) any written submission by the Committee in response to an appeal; and (5) any testimony of the law school in a hearing or appearance before the Council. (Dkt. 30-1 at 78-79 (Rule 24(b)).) A school may, under specified conditions, offer new evidence to supplement the record on appeal to the Council. (Dkt. 30-1 at 79 (Rule 24(d).) The Council has the power to affirm, amend, reverse, or remand the Committee's decision. (*Id.* (Rule 25(b)(1)-(4)).)

**B. The Committee's Decision and Coastal's Pending Appeal to the Council.**

The Committee decision challenged in Coastal's Complaint was reached after a two-year review, which involved multiple rounds of submissions from Coastal. Critically, that process is *ongoing* and Coastal has appealed the Committee's decision to the Council. (Dkt. 1 ¶ 107.)

As an ABA-approved law school, Coastal is required to submit to the ABA an annual questionnaire that provides information relevant to its ongoing compliance with the

ABA's Standards. (Dkt. 30-1 at 20 (Standard 104).) After reviewing Coastal's 2015 annual questionnaire, the Committee, in May 2016, requested additional information to allow it to "determine if the Law School continues to be in compliance with" certain ABA Standards. (Dkt. 1 ¶ 63.)

On March 31, 2017, after review of the "detailed information" provided by the school (Dkt. 1 ¶ 64), the Committee concluded that it was still unable to determine whether Coastal was in compliance with certain Standards, and requested more information from Coastal to evaluate its compliance with Standards relating to the School's academic program (Standard 301(a)), its academic support (Standard 309(b)), and its student admissions (Standard 501(b) and Interpretation 501-1). (Dkt. 1 ¶ 65.) In September 2017, the Committee concluded that it could not find the School in compliance, and directed the school to submit a report and information showing that it had come into compliance. (Dkt. 1 ¶ 67.) After reviewing the information submitted by Coastal in November 2017 (Dkt. 1 ¶ 68), the Committee concluded in December 2017 that Coastal was not in compliance. (Dkt. 1 ¶ 69.) The Committee requested that the School submit additional information and appear at a March 2018 hearing before the Committee. (*Id.*) Coastal's leadership, as well as its outside counsel in this litigation, appeared at the March 2018 hearing. (Dkt. 1 ¶ 71; Accreditation Comm. Dec., Dkt. 30-9 at 43.)

On April 27, 2018, the ABA issued a letter reporting the Committee's decision. (Dkt. 1 ¶ 72.) The decision consisted of eight single-spaced pages setting forth sixteen detailed written Findings of Fact containing information about Coastal's academic program, academic support, and admissions. (*See* Dkt. 30-9 at 42-52.) Based on these

factual findings the Committee concluded that Coastal had failed to sufficiently improve

its outcomes, and had not demonstrated its compliance with Standards 301(a), 309(b), or

501(b) and Interpretation 501-1.  (Dkt. 1 ¶ 75; Dkt. 30-9 at 48.)  More specifically, the

Committee determined that Coastal had failed to maintain a "rigorous program of legal

education that prepares its students, upon graduation, for admission to the bar," failed to

provide "academic support designed to afford students a reasonable opportunity to

complete the program of legal education, graduate, and become members of the legal

profession," and failed to demonstrate that it is not admitting applicants who did not

"appear capable of satisfactorily completing its program of legal education and being

admitted to the bar," as required by those Standards.  (Dkt. 30-9 at 48.)

The Committee concluded, pursuant to the Rule 14 proceedings and in accordance

with Rule 16(a)(1), that Coastal's non-compliance was substantial and persistent. (Dkt. 1

¶ 102.)  It directed Coastal to (i) develop a written reliable plan to come into compliance,

(ii) publish a statement setting forth the Committee's decision, and (iii) inform students of

the bar passage rates for class quartiles for the past six bar exams within 30 days of

distribution of semester grades.  (Dkt 1 ¶¶ 100, 103, 108.)  The Committee also directed

the appointment of a fact finder to visit Coastal, review information, and prepare a report,

to which Coastal will have an opportunity to respond.  (Dkt 1 ¶ 114; Dkt. 30-9 at 49-50.)

The letter setting forth the Committee's decision noted that the decision was subject to

appeal under Rules 15(b), 23, and 24 of the ABA's Rules of Procedure.  (Dkt. 30-9 at 52.)

On May 10, 2018, Coastal filed this lawsuit, claiming that, in making this

determination, the Council and Committee violated common law due process.  (Dkt 1.)  In

its Complaint, Coastal stated that it had "noticed its appeal of the Committee's decision to the Council." (Dkt 1 ¶ 107.)  On May 29, 2018, Coastal filed its appeal with the Council. It asked the Council to consider seven categories of new evidence, including its February 2018 bar results, and challenged the three remedial actions required by the Committee. (Currier Decl., Dkt. 30-14 ¶ 102; *see also* Dkt. 34-2 (full appeal as filed by the School).) The appeal is currently pending, and the Council will consider the appeal at its meeting on August 2, 2018 and issue a written decision.  (Dkt. 30-14 ¶ 103.)  The Council has stayed the notice requirement of bar passage rates to students pending the Council's decision. (Dkt. 30-14 ¶ 105.) Coastal remains an ABA approved school, and regardless the Council's decision, Coastal will have future opportunities to submit information showing that it has come into compliance with the Standards.

## STANDARD OF REVIEW

The ABA moves to dismiss Coastal's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), the Complaint must allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007), meaning that from the facts alleged the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court assumes the factual allegations in the Complaint are true, it need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually.  *Carmichael v.*

*Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). When a defendant challenges subject matter jurisdiction under Rule 12(b)(1), a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case without presuming the truthfulness of the plaintiff's allegations." *Makro Capital*, 543 F.3d 1254, 1258 (11th Cir. 2008) (internal quotation marks omitted).

The ABA alternatively moves for a stay of proceedings. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Peterson v. Avantair, Inc.*, No. 8:13-CV-1683-T-33-EAJ, 2013 WL 4506414, at *2 (M.D. Fla. Aug. 23, 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "A stay of proceedings is generally in the court's discretion" and is "based on a balancing test in which the movant bears the burden of showing either 'a clear case of hardship or inequity' if the case proceeds, or little possibility the stay will harm others." *Peterson*, 2013 WL 4506414, at *2.

## ARGUMENT

### I.     Coastal's Claim Is Not Ripe.

Ripeness raises both "jurisdictional and prudential concerns." *Pittman v. Cole*, 267 F.3d 1269, 1278 (11th Cir. 2001). "The constitutional aspect of the justiciability analysis focuses on whether an actual 'case or controversy' as required by Article III is presented, while the prudential part asks whether it is appropriate for this case to be litigated in a federal court by these parties at this time." *Id.* at 1277 (quoting *Hallandale Prof'l Fire Fighers Local 2238 v. City of Hallandale*, 922 F.2d 756, 759 (11th Cir. 1991)). The

purpose of the ripeness doctrine is to prevent "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements[.]" *Id.* at 1278 (quoting *Dig. Props, Inc. v. City of Plantation*, 121 F. 3d 586, 589 (11th Cir. 1997)). To determine whether a claim is ripe, a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (quoting *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301, 1315 (11th Cir. 2000)). This evaluation includes a consideration of "whether judicial intervention would inappropriately interfere with further administrative action" and "whether the courts would benefit from further factual development of the issues presented." *Id.* (quoting *Ohio Forestry Ass'n Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).

Coastal's Complaint is not ripe because the Council has not resolved Coastal's appeal. As made clear in Paragraph 1 of Coastal's Complaint, its common law due process claim is premised on a challenge to the Committee's April 2018 decision. (Dkt. 1 ¶ 1.) Coastal has exercised its right to appeal that decision, and it is currently under review by the Council. Without a judgment by the Council on the Committee's decision, this Court cannot yet evaluate Coastal's due process claim. *See Staver*, 169 F. Supp. 2d at 1377 (finding "[b]ecause the ABA has not yet reached a final decision on Barry's application [for accreditation], the Plaintiffs' claims are not ripe."); *Lincoln Mem'l Univ. Duncan Sch. of Law v. Am. Bar Assoc.*, No. 3:11-CV-608, 2012 WL 137851, at *5 (E.D. Tenn. Jan. 18, 2012) (finding law school was required to exhaust its appeal to the ABA before seeking judicial intervention). Coastal will not suffer hardship from delay: The School, the ABA,

and other sources have already issued public notice of the Committee decision, and neither of the other two remedial requirements—a notice to students and a fact-finder visit—will occur until after Coastal's appeal is resolved. For these reasons, it is premature for this Court to consider Coastal's claim until its appeal has concluded.

A.   **It Is Premature to Evaluate Coastal's Due Process Claim Where the Available Process Has Not Yet Concluded.**

The ABA's review of Coastal's compliance with the ABA's Standards is not over. The School has filed an appeal challenging the exact same Committee decision that it has asked this Court to review. The Court cannot evaluate whether Coastal was denied due process if Coastal has not yet actually availed itself of the processes still available to it. Moreover, the Court need not and should not under settled accreditation case law conduct a first review of the Committee decision where the Council is in the process of reviewing that same decision.

Claims against the ABA are not ripe where the ABA's internal review processes have not yet concluded. For example, in *Staver et al. v. ABA*, 169 F. Supp. 2d 1372, the court held the students' claims were not ripe for consideration because "the ABA has not yet reached a final decision on Barry's application." *Id.* at 1377. The court explained that Barry School of Law's application was *still being considered* by the Council, and the "Council will act again on Barry's application next February." *Id.* The court further found that the plaintiffs will "not suffer a hardship by having to wait" several additional months for the Council's decision, despite the fact that current students and graduates were not able to be barred in the State of Florida without the law school's provisional accreditation. And specifically, the court found that, as to graduates of Barry, the harm had "already

occurred," such that there was no hardship in postponing the court's consideration of the case. *Id.*

Similarly, in *Lincoln Memorial*, a law school brought a due process claim against the ABA after the Council denied its application for provisional accreditation. *Lincoln Mem'l*, 2012 WL 137851, at *5. The law school sought preliminary and permanent injunctive relief from the court rather than exercising its available internal appeal rights. *Id.* at *7. Because it had not exhausted its appeal rights, the court denied the school's request for injunctive relief. *Id.* It held that the law school was required to exhaust the available internal appeal before seeking judicial review. *Id.*

The requirement that entities exhaust administrative or internal remedies is designed to prevent "judicial interference until an administrative decision has been formalized[.]" *Pittman*, 267 F.3d at 1278 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). In an analogous situation under the Administrative Procedure Act ("APA"), the Supreme Court recognized: "[g]enerally, when Congress creates procedures 'designed to permit agency expertise to be brought to bear on particular problems,' those procedures 'are to be exclusive.'" *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 489 (2010) (quoting *Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420 (1965)). This exhaustion principle bars disappointed applicants from forgoing available administrative remedies just because they would prefer a judicial one, avoiding "premature interference with the agency's processes" and allowing the agency "to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).

The APA does not apply to accreditors, *see Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 713 (6th Cir. 2006), but the principle that courts should not intervene prematurely—before internal review is exhausted—applies even more strongly in the context of review of the action of a private accreditor. Review of the ABA's decision is even "more limited" and deferential than a Court's review of a decision rendered under the APA. *Id.* at 713; *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 39 F. Supp. 2d 889, 894 (W.D. Mich. 1998) ("There is probably no area of the law where deference is as necessary [as] it is when a court reviews the decision of an accreditation association[.]") (quoting *Transp. Careers, Inc. v. Nat'l Home Study Council*, 646 F. Supp. 1464, 1482 (N.D. Ind. 1986)). Courts will not "substitute [their own] judgment" for that of a private accreditor, but instead limit their review to looking at whether the accreditor's action was fundamentally fair. *Cooley*, 459 F.3d at 713; *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colls.*, 781 F.3d 161, 172 (4th Cir. 2015). The "accreditation agency's expertise and knowledge merits a measure of deference[,]" as the agencies possess "wide-ranging expertise in what may be highly technical and specialized fields of education[.]" *Prof'l Massage*, 781 F.3d at 171-172. Given the "great deference" afforded to accreditation decisions, *Cooley*, 459 F.3d at 713, it is imperative that the accreditor be permitted to complete its internal review—and express its fully considered accreditation judgment in the first instance. The Council's decision on appeal is therefore an essential prerequisite to the Court's consideration of the due process claim at issue.

In short, Coastal's Complaint is premature because the Council is still considering Coastal's appeal and has not yet rendered a decision. *Cf. United States v. Illinois Cent. R. Co.* 291 U.S. 457, 463 (1934) ("The various steps to be taken constitute parts of the administrative process which must be completed before the extraordinary powers of a court of equity may be invoked."). The Council is best situated to review the Committee's decision in the first instance, as the issue presented by Coastal in its Complaint—whether Coastal merits accreditation—"fall[s] squarely within [Council's] expertise." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 214 (1994). This is especially so where the School has asked the Council to consider seven additional categories of evidence proffered by Coastal, including the February 2018 bar passage rate. (Dkt. 30-14 ¶ 102.) After the Council has rendered a decision on Coastal's appeal, which could be as early as September, then Coastal's due process claim may be ripe for review—but not before. *See Weinberger*, 422 U.S. at 765.

### B. Coastal Will Not Suffer A Hardship By Awaiting the Decision of the Council.

In determining ripeness, a court must evaluate not only the fitness of the issues for judicial decision, but also "the hardship to the parties of withholding court consideration." *Pittman*, 267 F.3d at 1278 (quoting *Coal. for the Abolition of Marijuana Prohibition,* 219 F.3d at 1315). Coastal, and most importantly, its *students* will not suffer hardship should this Court withhold consideration during the pendency of the appeal. In its Complaint, Coastal details three remedial actions required by the Committee's decision that it claims cause it harm or hardship: (1) the student notice requirement of bar passage rates by quartile; (2) the website notice of the Committee's decision; and (3) the appointment of a

fact finder. (Dkt 1 ¶¶ 103, 108, 114.) However, none of these three remedial actions will cause hardship to Coastal should this Court await the Council's decision on Coastal's appeal.

*First*, as a remedial action, the Committee instructed the School to communicate to its students the "Florida and Georgia first-time bar examination passage rates, by class quartiles, for Law School graduates sitting for the Florida and Georgia bar examinations over the six administrations preceding the semester," and "the class quartile in which the student then falls" (the "student-notice requirement"). (Dkt. 1 ¶ 108.) However, Coastal never asked the Council to stay this requirement pending its appeal. (Dkt. 30-14 ¶ 104.) After Coastal filed its Motion for a Temporary Restraining Order and Preliminary Injunction on June 15, 2018 (Dkt. 18), the Council approved a stay of the student-notice requirement to facilitate orderly review of Coastal's appeal. (Dkt. 30-14 ¶ 105.) Because the student-notice requirement is stayed, there will be no hardship in this Court delaying consideration of Coastal's claim.[2]

---

[2] Even if the student-notice requirement was not stayed, Coastal's contention that it will suffer harm or hardship because students *may* negatively react to the notice is pure speculation. (*See* Dkt. 1 ¶ 110.) Coastal's students are "consumers of a legal education," as such, "they are college graduates and '[b]y anyone's definition … a sophisticated subset of education consumers, capable of sifting through data and weighing alternatives.'" *Casey v. Fla. Coastal Sch. of Law, Inc.*, No. 3:14-CV-1229-J-39PDB, 2015 WL 10818746, at *3 (M.D. Fla. Sept. 29, 2015) (quoting *Gomez-Jimenez v. New York Law Sch*., 943 N.Y.S.2d 834 843 (N.Y.Sup.Ct. 2012), *aff'd* 103 A.D.3d 13 (N.Y.App.Div. 2012)). Further, Coastal is free to provide additional factual information about its admissions standards to students in order to explain that the current students may not be in a comparable situation to students in past years.

*Second*, the Committee required that Coastal publish a public notice of the Committee's decision on its website so that students were apprised of the decision (the "website-notice requirement"). (Dkt. 1 ¶¶ 103.) As stated in its Complaint, Coastal has *already complied* with the requirement and the notice has now been posted on its website for almost two months. (Dkt. 1 ¶ 106.) The notice expressly states that the decision is subject to appeal under ABA Rules 15(b), 23, and 24. (Dkt. 1-1.) Additionally, an identical version of the notice has been posted on the ABA's website since the decision was entered,[3] and legal news outlets have reported on the decision—not to mention Coastal's active publicizing of this lawsuit. (*See* Dkt. 30-12 (press release by the School); Dkt. 30-13 (news article on the School's Complaint).) In sum, because the decision is already public, any alleged harm or hardship flowing from the website-notice has "already occurred," and there will be no additional harm or hardship should this Court dismiss Coastal's claim as not ripe. *See Staver*, 169 F. Supp. 2d at 1377 (evaluating ripeness and finding no hardship in delaying consideration where the alleged harm had "already occurred"); *cf. Kazal v. Price*, No. 8:17-cv-2945-T-23AAS, 2017 WL 6270086, at *3 (M.D. Fla. Dec. 8, 2017) (finding

---

[3] *See* https://tinyurl.com/ya48o8wt. As explained in the ABA's Memorandum of Law in Opposition to Plaintiffs' Motion for Temporary Restraining Order and for Preliminary Injunction ("Memorandum in Opposition" or "Mem."), Coastal has not sought an order requiring the ABA to remove the notice from its website. (Dkt. 30 at 27 n.8.) No such order could be available in light of the ABA's First Amendment right to publish its views about law school quality. *See, e.g., Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 937 F. Supp. 435, 442–44 (E.D. Pa. 1996), *aff'd*, 107 F.3d 1026 (3d Cir. 1997); *Zavaletta v. Am. Bar Ass'n*, 721 F. Supp. 96, 98 (E.D. Va. 1989).

no harm in the preliminary injunction context where the information "remains easily accessible elsewhere on the Internet").[4]

*Last*, the Committee has directed a fact finder to visit Coastal and collect certain information related to the Committee's continuing assessment of Coastal's compliance with the Standards. (Dkt. 1 ¶¶ 114-116.) But no fact finder has been appointed and no date has been set for a visit. (Dkt. 30-14 ¶¶ 94-96.) Indeed, none will be until the Council has decided Coastal's appeal—an appeal which will review the Committee's decision to appoint a fact finder. (Dkt. 30-14 ¶¶ 96-100.) Because the visit will either occur after the conclusion of Coastal's appeal or not at all, there is no hardship in this Court delaying consideration of Coastal's claim pending the appeal. In any event, a fact finder tasked with assessing information that will be used in the Committee's continuing evaluation of Coastal's compliance with standards is hardly a hardship; the gathering of such information enhances, rather than detracts from, the process Coastal receives.

In short, Coastal will "not suffer a hardship by having to wait" for the Council's decision. *See Staver*, 169 F. Supp. 2d at 1377. Because Coastal will not experience any hardship by this Court withholding its consideration and because its claim is unfit for

---

[4] Coastal's allegation that the website-notice requirement is a "compelled speech requirement" is a red herring. The First Amendment does not apply to the ABA as a private accreditor, *Hiwassee Coll., Inc. v. S. Ass'n. of Colls. & Sch.* 531 F.3d 1333, 1335 (11th Cir. 2008), and it is commonplace—and not "generally prohibited"—for an accreditor to require an accredited school to provide accurate information such as bar pass rates to current and prospective students. *See, e.g.*, *S. Cal. Inst. of Law v. Biggers*, 613 F. App'x 665, 666 (9th Cir. 2015) (accreditor has "legitimate interest in ensuring that prospective law students do not overestimate their prospects of passing the bar after attending an accredited law school").

judicial review at this juncture, this Court should dismiss the Complaint as not ripe.  *See Pittman*, 267 F.3d at 1278.

## II.     Coastal Fails to State a Claim for Common Law Due Process Where It Has Not Completed the Process and the Council Has Not Rendered a Decision.

To assert a claim for common law due process, Coastal must have actually engaged in the process with the entity it claims violated its rights, and that entity must have rendered a decision that can be evaluated within the common law due process framework.  Where Coastal has not done so, it fails to state a claim upon which relief can be granted.

Because "the standards of accreditation are not guides for the layman but for professionals in the field of education," "great deference should be afforded the substantive rules of these bodies *and courts should focus on whether an accrediting agency such as the ABA followed a fair procedure in reaching its conclusions*."  *Cooley*, 459 F.3d at 713 (emphasis added) (quoting *Med. Inst. of Minn. v. Nat'l Assn. of Trade and Tech. Sch,* 817 F.2d 1310 (8th Cir. 1987)).  More precisely, courts should "focus primarily on whether the accrediting body's internal rules provide[d] a fair and impartial procedure and whether it [followed] its rules in reaching its decision."  *Prof'l Massage*, 781 F.3d at 172 (quoting *Parsons Coll. v. N. Cent. Ass'n of Colls. & Secondary Sch.*, 271 F. Supp. 65, 73 (N.D Ill. 1967)).  A court is "not free to conduct a *de novo* review or substitute [its] judgment for that of the ABA or its Council."  *Cooley*, 459 F.3d at 713.  Rather, a court's review of an accreditation decision is extremely limited: it may assess only (1) whether the Council and Committee have provided fair process, and (2) whether the accreditation action is supported by substantial evidence.  *See Hiwassee*, 531 F.3d at 1335 n.4.

Coastal's attempt to cry foul procedure in its Complaint falls short of pleading the requisite allegations to form the basis of a common law due process claim. In Count I, Coastal alleges that the ABA, which it defines as the Association, Council, and Committee (Dkt. 1 ¶ 7), has violated due process because "the ABA did not apply to Florida Coastal clear standards for accreditation; did not specify in writing the supposed deficiencies at Florida Coastal; did not consider Florida Coastal's responses regarding the supposed deficiencies, including the most recent bar passage rates . . .; did not describe the basis for its adverse accrediting actions; did not consistently apply and enforce its standards; and did not employ effective controls against the inconsistent application of its standards." (Dkt. 1 ¶ 126.) It further alleges as to Count I that the "ABA's conclusions . . . were arbitrary, capricious, unreasonable, an abuse of discretion, not in accordance with law, contrary to constitutional right, without observance of procedure required by law, and not based on substantial evidence." (Dkt. 1 ¶ 127.) Yet, Coastal admits it noticed an appeal of the Committee's decision to the Council. (Dkt. 1 ¶ 107.) There are thus two critical missing pieces from its Complaint: (1) Council review and decision on the Committee's action, and (2) allegations pertaining to the admittedly ongoing internal appeal process.

Put simply, the ABA, which is composed of both the Committee *and* the Council, has not yet completed its review. Without a decision by the Council—and while the ABA is still in the midst of providing process to Coastal with respect to the decision its Complaint challenges—the Court cannot determine whether the ABA "abused its discretion or reached a decision that was arbitrary or unreasonable." *See Cooley*, 459 F.3d at 713. And, where the Complaint lacks allegations regarding admittedly ongoing procedures that both

parties are engaging in pursuant to the ABA's Rules, the Court cannot determine "whether the accrediting body's internal rules provide[d] a fair and impartial procedure and whether it [followed] its rules in reaching its decision." *Prof'l Massage*, 781 F.3d at 172 (quoting *Parsons*, 271 F. Supp. 73).

Regardless of the outcome of the appeal, the process afforded Coastal in the ABA's continuing evaluation of its compliance with the Standards will continue. But where the Complaint contains allegations solely regarding the Committee decision and Committee process and admits an appeal of the Committee's decision has been noticed, this Court cannot make the requisite determination needed to afford Coastal the relief it requests: It cannot determine whether the ABA has provided fair process and rendered a decision that is supported by substantial evidence. *See Hiwassee*, 531 F.3d at 1335 n.4. For these reasons, Coastal fails to state a claim for common law due process, and its Complaint should be dismissed without prejudice.

## III. In the Alternative, This Court Should Stay Proceedings Pending Conclusion of the ABA Appeal and the ABA's Motion to Consolidate Cases Pursuant to 28 U.S.C. § 1407.

The ABA respectfully submits that Coastal's Complaint should be dismissed without prejudice on ripeness grounds and because Coastal fails to state a claim for common law due process. However, if the Court disagrees, it should nevertheless stay the proceedings. A stay of proceedings is within this Court's discretion and is "based on a balancing test in which the movant bears the burden of showing either 'a clear case of hardship or inequity' if the case proceeds, or little possibility the stay will harm others." *Peterson*, 2013 WL 4506414, at *2 (quoting *Landis*, 299 U.S. at 254).

For all of the reasons described in Section I, the Court should stay the proceedings pending issuance of a decision by the Council on Coastal's pending appeal. Significantly, as described in Section I.B, Coastal will suffer no hardship through a delay of these proceedings. Moreover, because the Council's decision on appeal could moot part or all of Coastal's claim, judicial economy weighs strongly in favor of staying the case. *See Lincoln Mem'l Univ. Duncan Sch. of Law v. Am. Bar Ass'n*, No. 3:11-CV-608, 2012 WL 1108125, at *10–11 (E.D. Tenn. Apr. 2, 2012) (staying proceedings "will serve the interests of judicial economy and efficiency" pending conclusion of the internal ABA appeal process); *cf. Alps S., LLC v. Ohio Willow Wood Co.*, No. 8:09-CV-386-T-EAK, 2011 WL 899627, at *1 (M.D. Fla. Mar. 15, 2011) (staying proceedings pending the outcome of the Patent and Trademark Office re-examination proceedings).

These circumstances alone warrant a stay, but there is an additional factor supporting judicial forbearance here. On May 31, 2018, the ABA filed a motion for consolidation of the pretrial proceedings of this case and two other cases pursuant to 28 U.S.C. § 1407. *See* Mot. for Consolidation of Law School Accreditation Actions, *In re Law Sch. Accreditation Litig.*, MDL 2855 (J.P.M.L. May 30, 2018). The motion for consolidation arises from overlapping challenges to the Council's accreditation decisions, all filed by InfiLaw Corporation. The three separate lawsuits, including this case, were filed against the ABA in three separate federal district courts, alleging many identical facts and legal theories. Each suit challenges an ABA accreditation decision on the same legal grounds. Without consolidation, there is a substantial risk of inconsistent rulings on key issues involving both the ABA's accreditation standards and the legal standards under

which it accredits law schools. The motion for consolidation is fully briefed and set to be argued on July 26, 2018. A decision is anticipated within a week or two thereafter. A stay is warranted where a decision by the Judicial Panel on Multidistrict Litigation is pending. *See Hedberg v. Actavis Grp.*, No. 810-CV-592-T-33TBM, 2010 WL 963196, at *1 (M.D. Fla. Mar. 16, 2010) (staying proceedings "in the interest of judicial economy" pending decision by Judicial Panel on Multidistrict Litigation).

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant the ABA's Motion to Dismiss, or in the alternative, grant a stay of proceedings.

Respectfully submitted,

/s/ ***Anne E. Rea***
Kevin E. Hyde
FL Bar No. #0768235
khyde@foley.com
Emily Friend O'Leary
FL Bar No. #73042
eoleary@foley.com
FOLEY & LARDNER LLP
One Independent Drive, Suite 1300
Jacksonville, FL 32202-5017
Telephone: 904.359.2000
Facsimile: 904-359-8700

and

James A. McKee
FL Bar No. 0638218
jmckee@foley.com
106 East College Avenue, Suite 900
Tallahassee, FL 32301
Telephone: 850-222-6100
Facsimile: 850-561-6475

Anne E. Rea (IL 6188384)*
area@sidley.com
Tacy F. Flint (IL 6284806)*
tflint@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
*Admitted *pro hac vice*

*Attorneys For Defendant American Bar Association; Council Of The Section Of Legal Education And Admissions To The Bar, American Bar Association; And Accreditation Committee Of The Section Of Legal Education And Admissions To The Bar, American Bar Association*

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that on July 1, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record in this case.

<u>/s/ ***Anne E. Rea***</u>
Attorney