# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

FLORIDA COASTAL SCHOOL OF
LAW, INC. and INFILAW
CORPORATION,

    Plaintiffs,

v.                                                 Case No. 3:18-cv-621-J-39JBT

AMERICAN BAR ASSOCIATION,
COUNCIL OF THE SECTION OF
LEGAL EDUCATION AND
ADMISSIONS TO THE BAR,
AMERICAN BAR ASSOCIATION,
and ACCREDITATION COMMITTEE
OF THE SECTION OF LEGAL
EDUCATION AND ADMISSIONS TO
THE BAR, AMERICAN BAR
ASSOCIATION,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 18; Motion) and Defendants' Response in Opposition (Doc. 30).[1] Plaintiffs supplemented their Motion with a June 28, 2018 filing, which contains correspondence between the parties and additions to the administrative record. (Doc. 34). The Court has also had the benefit of oral

---

[1] As previously explained by the Court, the Court treats Plaintiffs' Motion as one for preliminary injunction only. (Doc. 22).

argument from the parties, which it incorporates herein. (Doc. 35; June 29, 2018 Minutes).

A. Background

This case involves Plaintiffs' Florida Coastal School of Law, Inc., and Infilaw Corporation (collectively, "Coastal") claim that Defendants American Bar Association; Council of the Section of Legal Education and Admissions to the Bar, American Bar Association; Accreditation Committee of the Section of Legal Education and Admissions to the Bar, and the American Bar Association (collectively, "ABA") violated Plaintiffs' due process rights "in the accreditation process." (Doc. 1 ¶ 1; Complaint). Coastal filed its two Count Complaint (Count I, Due Process and Count II, Declaratory Judgment), on May 10, 2018, but waited until June 15, 2018, to seek a preliminary injunction and temporary restraining order. (Docs. 1 and 18).

Coastal was founded in 1996 and the ABA granted it full accreditation in 2002. (Doc. 19.1 ¶ 2; Devito Aff.). After the school's admission criteria dipped, which coincided with concerning bar passage and attrition rates, the ABA took notice and initiated investigative proceedings on May 2, 2016. (Doc. 30.2). Measuring from 2011, Coastal has an "ultimate" bar passage rate as follows:

| Graduation Year | Ultimate Pass Rate |
| --- | --- |
| 2011 | 90.06% |
| 2012 | 94.64% |
| 2013 | 89.30% |
| 2014 | 85.43% |
| 2015 | 77.17% |

Id. ¶ 8.

Coastal's ultimate bar passage table contrasts with the undisputed "first-time bar passage rate" table cited by the ABA in its decision dated April 27, 2018. The ABA recorded first time pass rates expressed in percentage points as follows

| Year | Coastal Pass | State Pass | Difference |
|---|---|---|---|
| 2012 | 76.0 | 79.9 | -4.0 |
| 2013 | 75.4 | 79.8 | -4.4 |
| 2014 | 68.4 | 78.4 | -10.0 |
| 2015 | 61.2 | 73.1 | -11.9 |
| 2016 | 44.83 | 66.85 | -22.01 |
| 2017 | 42.53 | 68.84 | -26.31 |

(Doc. 30.9 at 46). At the March 15-17 hearing before the ABA, Coastal indicated that it thought the February 2018 bar passage rate would bring better news, conservatively estimating a passage rate in the 50s, with an optimistic estimate in the 60s with results being available on April 16.[2]

In a letter dated April 16, 2018, the Florida Board of Bar Examiners reported that Coastal had 62.1% of its first-time test takers pass, which was 4.2% higher than the state-wide pass rate of 57.9%. (Doc. 19.1 at 11). These results were released approximately eleven days before the ABA issued its April 27, 2018 decision regarding Coastal's accreditation. Id. at 13-14. Despite the success Coastal enjoyed

---

[2] 153 students from Coastal took the February Bar, of which 46 were first-time takers and 107 were repeat takers. (Doc. 30.9 at 46). On the data presented in the decision, it appears that repeat test takers are less likely to pass the bar than first-time takers. Id. at 45.

on the February 2018 Florida Bar Exam, the ABA found that Coastal continued to be in violation of the following standards:

> **Standard 301:** requires a law school to "maintain a rigorous program of legal education" that prepares students "for admission to the bar and for effective, ethical, and responsible participation as members of the legal profession." (*Id.* at 15.)
>
> **Standard 309(b:)** requires a law school to "provide academic support designed to afford students a reasonable opportunity to complete the program of legal education, graduate, and become members of the legal profession." (*Id.* at 21.)
>
> **Standard 501(b):** requires a law school to "only admit applicants who appear capable of satisfactorily completing its program of legal education and being admitted to the bar." (*Id.* at 31.)
>
> **Interpretation 501-1:** states that among the factors considered in assessing compliance with Standard 501 are (i) entering student credentials, (ii) academic attrition, (iii) bar passage rates, and (iv) effectiveness of the academic support program. (*Id.*)

(Doc. 30.9 at 43 and 48). The ABA found Coastal's violations to be "substantial" and "persistent." Id. at 48. In light of its findings, the ABA required Coastal to: (1) develop a written reliable plan for bringing itself into compliance with Standards 301(a), 309(b), and 501(b) and Interpretation 501-1; (2) allow a fact finder appointed by the ABA to visit Coastal to review, among other things, admissions data, attrition rates, the rate of student loan defaults, and curriculum materials; (3) provide to all admitted students and publish on its website a statement of the specific remedial action the ABA required, with a statement or link to the statement on Coastal's website; and (4) advise students in writing, within 30 days of posting grades, (a) the school's bar passage rates by class quartiles over the six bar administrations preceding the

semester, (b) the student's rank by quartile, (c) and attrition rates. Id. at 52. Plaintiffs seek to preliminary enjoin Defendants from enforcing these remedial measures citing to violations of due process. During the June 29, 2018 Hearing, the parties narrowed the remedial measures placed at issue to only the ABA's requirement that Coastal post on its website a notice that the ABA determined Coastal to be non-compliant with various ABA standards. The Notice also reflected that Coastal appealed the ABA's determination.

In support of its request for injunction, Coastal cites to its success on the February 2018 Florida Bar. Coastal also cites to evidence of its success in raising the entering class's LSAT (Law School Admissions Test) scores. For example, Coastal raised the 25th percentile LSAT score of its entrants from a 141 in 2016 to a 145 in 2017 and to a 147 in 2018. Id. at 44. Additionally, Coastal instituted various internal programs, such as the "Studying the Law" labs for first-year students and the requirements for those on academic probation. Id. at 18 and 44. Despite these measures, Coastal has encountered troubling attrition rates:

| Year | Rate of Attrition |
|---|---|
| 2013 | 10 |
| 2014 | 19 |
| 2015 | 23 |
| 2016 | 26 |
| 2017 | 30 or (37.9) |

Id. at 18. Additionally, the February Bar result, while promising, does not necessarily mean Coastal will sustain a break from its pattern of poor performance on the Bar. All of this information was considered by the ABA in its decision.[3]

B.   **Discussion**

"For a district court to grant a preliminary injunction, the movant must establish: (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246-47 (11th Cir. 2002); see also Fed. R. Civ. P. 65. A preliminary injunction is a drastic and extraordinary remedy which should not be granted unless the movant can clearly establish each of the four elements. America's Health Ins. Plans v. Hudgens, 742 F.3d 1319, 1329 (11th Cir. 2014). "The burden of persuasion on all of the four requirements is at all times upon the plaintiff." Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974).[4] The failure to establish an element, such as a substantial likelihood of success on the merits, will warrant denial of the request for preliminary injunctive relief and obviate the need to consider the remaining prerequisites. See Pittman v. Cole, 267 F.3d 1269, 1292

---

[3] It is unclear what role, if any, Coastal's program to pay certain students to defer taking the Bar had on its passage rates or the ABA's decision.

[4] In Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

(11th Cir. 2001) (citing Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994)); see also Del Monte Fresh Produce Co. v. Dole Food Co., 148 F. Supp. 2d 1326, 1339 n.7 (S.D. Fla. 2001) ("Because Del Monte has not met the first requirement, it is not necessary to discuss the remaining elements required for a preliminary injunction.").

In deciding whether a party has made the requisite showing for entry of an preliminary injunction, "[a] district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (internal quotation marks and citation omitted). The Court is mindful that "[p]reliminary injunctions are, by their nature, products of an expedited process often based upon an underdeveloped and incomplete evidentiary record." Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc., 304 F.3d 1167, 1171 (11th Cir. 2002).

### 1. *Substantial likelihood of success on the merits*

The Eleventh Circuit has explicitly rejected attempts by parties to assert a private right of action pursuant to the Higher Education Act. Hiwassee Coll., Inc. v. S. Ass'n Of Colleges And Sch., 531 F.3d 1333, 1335 (11th Cir. 2008); McCulloch v. PNC Bank Inc., 298 F.3d 1217, 1224 (11th Cir. 2002). Because Coastal has failed to present (likely because they cannot) sufficient evidence that the ABA is a governmental actor bound by the Fifth Amendment's due process clause, the Court's review is limited to whether the ABA complied with the "common law duty to employ fair procedures when making decisions affecting their members . . . ." See Hiwassee

Coll., Inc., 531 F.3d at 1335 (quoting Thomas M. Cooley Law Sch. v. Am. Bar Ass'n, 459 F.3d 705, 711 (6th Cir. 2006)).[5] In Cooley, the Sixth Circuit recognized that "'quasi-public' professional organizations and accrediting agencies such as the ABA have a common law duty to employ fair procedures when making decisions affecting their members." Thomas M. Cooley Law Sch., 459 F.3d at 711. The purpose of which is to act as a "check on organizations that exercise significant authority in areas of public concern such as accreditation and professional licensing." Id. at 712.

The Eleventh Circuit has not decided whether accrediting agencies have a common law duty to comport with the strictures of due process, but to the extent that they must, the court adopted the "standard of review delineated in Cooley, and review[ed] only whether the decision of an accrediting agency . . . [was] arbitrary and unreasonable or an abuse of discretion and whether the decision [was] based on substantial evidence." Hiwassee Coll., Inc., 531 F.3d at 1335 n.4 (internal quotations omitted). Such a review is guided by 5. U.S.C. § 706(2)(A), but more narrowly pursued in instances such as the one before the Court.[6] Thomas M. Cooley Law

---

[5] While Coastal does mention the United States Department of Education, it does not make an argument of an "pervasive entwinement" between the United States and the ABA as articulated by the United States Supreme Court in Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 291 (2001).

[6] Section 706 instructs courts that are reviewing agency actions to

>  (1) compel agency action unlawfully withheld or unreasonably delayed; and

>  (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

Sch., 459 F.3d at 713 (holding that "great deference should be afforded the substantive rules of these bodies and courts should focus on whether an accrediting agency such as the ABA followed a fair procedure in reaching its conclusions.").

Coastal begins its argument by alleging that the ABA standards are vague and that the ABA has not explained how Coastal is out of compliance with the standards at issue. Motion at 15. Coastal argues that the ABA's conclusions are not supported by its factual findings, and further, that the ABA fails to describe how Coastal could "return to compliance with the Standards." Id. at 15-16. Finally, Coastal contends that the ABA's remedial measures are not in line with Coastal's purported violations, nor does the ABA reconcile its alleged divergent treatment of other law schools. Id. at 16. The ABA disputes these allegations, and also contends that Coastal's petition for judicial review is premature.

---

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

The parties agree that Coastal is entitled to appeal the decision pursuant to the ABA Standards and Rule of Procedure for Approval of Law Schools. (Doc 30.1 at 78-79); (19.1 ¶ 19). Coastal has availed itself of this intra-agency appellate process. (Doc. 19.1 ¶ 19); Response at 20. In the interim, the ABA has stayed its July 2, 2018 requirements regarding the fact finder and that Coastal advise students in writing, within 30 days of posting grades of, (a) the school's bar passage rates by class quartiles over the six bar administrations preceding the semester, (b) the student's rank by quartile, (c) and attrition rates. Response at 8. As part of the appeal process, the ABA will send a fact finder to meet with Coastal representatives and to make findings, while allowing Coastal to respond and have compliance reconsidered. Response at 15.

The ABA's position regarding the appeals process invokes questions of ripeness, which "involves consideration of both jurisdictional and prudential concerns." Pittman v. Cole, 267 F.3d 1269, 1278 (11th Cir. 2001). As explained in Pittman,

> The ripeness doctrine prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. . . . To determine whether a claim is ripe we must evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

Id. Confronted with whether judicial review of the ABA's denial of provisional accreditation was appropriate, a district court located in this district held that judicial review was premature because the ABA had not reached a final decision where the plaintiff had appealed the ABA's initial decision. Staver v. Am. Bar Ass'n, 169 F. Supp. 2d 1372, 1377 (M.D. Fla. 2001); accord. Lincoln Mem'l Univ. Duncan Sch. of

Law v. Am. Bar Ass'n, No. 3:11-CV-608, 2012 WL 1108125, at *2 (E.D. Tenn. Apr. 2, 2012) ("In denying plaintiff's motion for injunctive relief, the Court found that plaintiff had failed to demonstrate a strong likelihood of success on the merits because it was likely required to exhaust its administrative remedy[ ]."). Likewise, because review of the ABA's decision is still pending, judicial review at this time is not appropriate.

That said, the Court is mindful of its obligation to examine the hardship that might inure to a party when the Court withholds judicial consideration. See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1315 (11th Cir. 2000). This is particularly important where, as is the case is here, a party is being required to act as opposed to being denied a benefit conferred.[7] However, to the extent that Coastal references a harm that might occur during the pendency of the appeal, the Court notes that Coastal waited almost 35 days from the date it filed its Complaint until it filed the initial Motion. During this time Coastal has already complied with the ABA's requirement to provide public notice of its decision, and the ABA has stayed the requirement that Coastal provide a corresponding bar passage rate to grade quartile placement and to allow a fact finder access to Coastal's financial information. Coastal cannot now show an undue hardship by providing its students access to the ABA's decision.

Aside from the prematurity of Coastal's request, or, alternatively, its tardiness, the Court cannot find a due process violation has occurred where the information

---

[7] Regardless of whether the ABA is withholding accreditation pending appeal or requiring a notice that a school is not in compliance pending appeal, the affected school still bears the consequences of the ABA's initial decision.

Coastal argues is suggestive of a due process violation was not provided until after the ABA's hearing concluded. The ABA's decision was almost two years in the making, and at some point their obligation to accept new evidence must necessarily come to an end. The Court need not identify exactly where that point occurred, but it was certainly reasonable for the ABA to rely on the evidence submitted by the hearing date. To hold otherwise would require that a decision unfavorable to a school be indefinitely held in abeyance in hopes that the next round of results were more favorable. As Coastal has failed to show a substantial likelihood of success on the merits, its Motion is due to be denied.

2.  *Irreparable Harm*

While the Court need not go further, it also concludes that Coastal has not made a showing of irreparable harm. "A showing of irreparable injury is the sine qua non of injunctive relief." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotations omitted). To qualify as irreparable, an injury must not be "remote nor speculative, but actual and imminent" and it cannot be remedied through monetary means. Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) (internal quotations omitted). "A court need not address the other elements of a preliminary injunction when 'no showing of irreparable injury was made.'" Antoine on behalf of I.A. v. Sch. Bd. of Collier Cty., 301 F. Supp. 3d 1195, 1199 (M.D. Fla. 2018) (quoting Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am., 896 F.2d at 1285).

Coastal argues that the ABA's requirement that Coastal post on its website and provide all admitted students with notice that the ABA has determined Coastal to

be out of compliance with certain ABA standards exacts irreparable harm on Costal.[8] Its first argument is that the notice will deter "better-credentialed" students which in turns makes it more difficult for Coastal to comply with ABA standards. Its second argument is that the notice requirement violates the prohibition against the Government's compulsion of speech. Addressing the ABA's first argument, the Court finds that Coastal has not shown irreparable harm where it is forced to disclose the outcome of the ABA's determination, especially where this determination is an exercise in transparency, and students—potential and current— are told of both the ABA's decision and Coastal's appeal. Moreover, the harm Coastal may suffer is too speculative.

During the June 29, 2018 Hearing, the ABA walked the Court through the process of accessing the required disclosure, which can be appropriately classified as being "buried" on Coastal's website—especially as compared to the ease in accessing Coastal's boosting of its status as an ABA accredited school on its home page. To access the disclosure, a user must enter Coastal's website, click the "Professional Development" tab, then scroll to the bottom of the page, where the link is the last in a series titled "March 2018 Accreditation Committee Decision."[9]

---

[8] While Coastal takes issue with the appointment of a fact finder being sent to the school only to the extent that the fact finder is tasked with reviewing default rates on student loans and the schools financial condition, Coastal makes no argument how the injury from this review would result in irreparable injury, nor does the Court see how an irreparable injury would result. At the June 29, 2018 Hearing, Coastal made the unrefuted representation that the ABA agreed to withhold its investigation into Coastal's financial condition. (Doc. 37 at 6, 31). Accordingly, the Court will treat this point as moot.

[9] The specific page can be found at https://www.fcsl.edu/gainful-employment-and-aba-required-disclosures.html.

Coastal's argument that the public notice of the ABA's decision will turn away the best qualified students is pure speculation, especially where a prospective student astute enough to find the disclosure will also have access to all of the data Coastal argues should substantiate an ABA determination that Coastal in compliance with all standards. For example, Coastal's website discloses its employment statistics and boosts about its increasingly qualified entering class profile and February 2018 Bar passage rate that "ranks 4th out of Florida's 11 law schools and has surpassed the statewide average passage rates of 57.9%."[10]

Even so, Coastal's argument that its reputation may suffer if its students are put on notice about Coastal's various statistics regarding the success of its students is not without merit, especially because the notice includes analytic conclusions, such as whether Coastal is in compliance with ABA Standards. However this information is already published and available to the public and has been for nearly two months. Allowing Coastal to remove this information from its website will not undo whatever harm it claims has already occurred. The case of Bollea v. Gawker Media, LLC, No. 8:12-CV-02348-T-27, 2012 WL 5509624, at *1 (M.D. Fla. Nov. 14, 2012), is instructive. Unbeknownst to the plaintiff in that case, he was recorded engaging in sexual acts with another man's wife. Id. Excerpts from the encounter were later posted on a website without the plaintiff's permission. Id. When the plaintiff sought a preliminary injunction, he failed in part because the district court held that "the proverbial 'cat is out of the bag,' rendering injunctive relief ineffective." Id. at 4.

---

[10] https://www.fcsl.edu/coastal-law-grads-have-earned-a-621-bar-passage-rate-on-the-february-2018-florida-bar-exam.html.

Moreover, the status quo, which a preliminary injunction is designed to protect, was in favor the defendant by the time the motion was considered. See id.; see also Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp., 441 F.2d 560, 561 (5th Cir. 1971) ("The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits.").

The Court is also not persuaded by Coastal's passing cite to S.D. v. St. Johns Cty. Sch. Dist., 632 F. Supp. 2d 1085, 1088 (M.D. Fla. 2009), for the proposition that the notice requirement is government compelled speech. In S.D., the court was dealing with a public school's requirement that a student choose between exclusion and singing a song entitled "In God We still Trust." Id. at 1089. The case at bar does not involve a governmental entity compelling religious speech, but rather a quasi-professional organization requiring transparency. This transparency requirement does not implicate violations of the First Amendment. See S. California Inst. of Law v. Biggers, 613 F. App'x 665, 666 (9th Cir. 2015) (distinguishing commercial speech from private speech, and further that disclosure of information such as bar exam results relates to "purely factual and uncontroversial information . . ."); accord Dossett v. First State Bank, 399 F.3d 940, 951 (8th Cir. 2005) ("Under §1983 a plaintiff must establish not only that a private actor caused a deprivation of constitutional rights, but that the private actor willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy.").

Accordingly, after due consideration, it is

**ORDERED:**

1.  Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 18) is **DENIED**.

**DONE** and **ORDERED** in Jacksonville, Florida this 9th day of July, 2018.

_____
BRIAN J. DAVIS
United States District Judge

2
Copies furnished to:

Counsel of Record