UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FLORIDA COASTAL SCHOOL OF
LAW, INC.; and INFILAW CORPORATION,

    *Plaintiffs*,

    v.

AMERICAN BAR ASSOCIATION;
COUNCIL OF THE SECTION OF LEGAL
EDUCATION AND ADMISSIONS TO THE
BAR, AMERICAN BAR ASSOCIATION; and
ACCREDITATION COMMITTEE OF THE
SECTION OF LEGAL EDUCATION AND
ADMISSIONS TO THE BAR, AMERICAN
BAR ASSOCIATION,

    *Defendants*.

Case No.: 3:18-cv-00621-BJD-JBT

_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO REDESIGNATE CASE FROM TRACK TWO TO TRACK ONE**

Pursuant to this Court's Local Rule 3.01(b), Plaintiffs Florida Coastal School of Law ("Florida Coastal") and InfiLaw Corporation ("InfiLaw") hereby oppose Defendants' motion to redesignate this case from Track Two to Track One. *See* Doc. 44.

On May 23, 2018, this case was designated as Track Two. *See* Doc. 9. On July 18, Defendants (collectively, "the ABA") moved to redesignate the case as Track One. For the following reasons, the ABA's motion should be denied.

Local Rule 3.05 instructs the Clerk to designate cases "to their appropriate tracks," although the presiding judge may thereafter redesignate a case to another track. M.D. Fla. R. 3.05(a), (b). The rule provides that "Track Two Cases will normally consist of non-complex actions which will require a trial, either jury or non-jury, absent earlier settlement or disposition by summary judgment or some other means." *Id*. 3.05(b)(2). The ABA's view is that this case

should be switched to Track One because that track includes actions for review on an administrative record. *See id*. 3.05(b)(1)(A).

It appears that redesignation of a case from Track Two is an unusual occurrence. *See Gomez v. Bank of Am. Corp.*, No. 8:15-cv-324, 2015 WL 1349818, at *2 (M.D. Fla. Mar. 24, 2015) (denying party's request for the Court to "retract its designation of the case as a Track Two Case"); *see also Roper v. Bd. of Cty. Comm'n of Brevard Cty.*, No. 6:06-cv-1551, 2007 WL 4336170, at *5 (M.D. Fla. Dec. 7, 2007) (rejecting party's argument that "this case has been incorrectly designated as a track two case"). *Rosemond v. Napolitano*, No. 8:09-cv-2590, 2010 WL 1817393 (M.D. Fla. May 5, 2010), cited by the ABA, provides a rare example of a Two-to-One redesignation. In *Rosemond*, an action brought against the Department of Homeland Security under the Administrative Procedure Act, the Court granted defendants' motion to redesignate the action from Track Two to Track One where plaintiff agreed to the redesignation on the condition that the move would not bar him from seeking discovery. *See id*. at *1; *cf. Richard v. Int'l Bus. Machs. Corp.*, No. 2:11-CV-720, 2012 WL 1131996, at *2 (M.D. Fla. Apr. 4, 2012) (denying motion to redesignate ERISA case from Track One to Track Two but explaining that appropriate "discovery will be allowed").

The ABA also cites *School Board of Lee County v. M.P.*, No. 2:15-cv-730, 2016 WL 8716258 (M.D. Fla. Sept. 30, 2016). In that case, the court considered taking the case off of Track One, but it decided against doing so because both parties had stipulated to Track One and "*the parties do not dispute* that this case presents narrow legal issues, the resolution of which will turn upon a review of the administrative record and application of prevailing law." *Id*. at *5 (emphasis added). Thus, unlike here, the parties agreed it was a Track One case. The ABA's brief begins its quotation of this sentence after the language italicized above, thereby omitting

that language. *See* Doc. 44 at 4.

This case should stay on Track Two because it meets the Track Two definition: It is a "non-complex action[ ] which will require a trial, either jury or non-jury, absent earlier settlement or disposition by summary judgment or some other means." M.D. Fla. R. 3.05(b)(2). This case may or may not be decided on summary judgment; it is far too early to say at this stage. If the case is not decided on summary judgment, it means a trial will be necessary. Again, it is far too early to say if a trial will be needed. The fact that the case could go to trial, however, strongly suggests that it should remain on Track Two. Due process actions by a school against its accreditor do go to trial in some cases. *See, e.g.*, *Wards Corner Beauty Acad. v. Nat'l Accrediting Comm'n of Career Arts & Scis.*, 290 F. Supp. 3d 463, 464 (E.D. Va. 2018) (two-day bench trial held); *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Schs. & Colls.*, No. 1-12-cv-911, 2014 WL 201879 (E.D. Va. Jan. 17, 2014) (four-day bench trial held), *aff'd in part and rev'd in part*, 781 F.3d 161 (4th Cir. 2015). In *Prof'l Massage*, the Fourth Circuit criticized the nature of the trial conducted by the district court in that case as amounting to an improper de novo review of the accreditor's decision. The Fourth Circuit did not say, however, that it was improper for the district court to hold a trial. *See* 781 F.3d at 172. Indeed, it should be noted that, *after* the binding decision in *Prof'l Massage*, the district court held a trial in *Wards Corner Beauty Academy*.

Track Two is also the right track because Plaintiffs intend to pursue discovery in this case. Although "[t]he focal point for judicial review of an administrative agency's action should be the administrative record," Eleventh Circuit precedent instructs that "certain circumstances may justify going beyond the administrative record." *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) (hereinafter,

3

"*PEACH*"). The Court in *PEACH* cited with approval Ninth Circuit precedent holding that a court "may go beyond the administrative record" where "1) an agency's failure to explain its action effectively frustrates judicial review; 2) it appears that the agency relied on materials not included in the record; 3) technical terms or complex subjects need to be explained; or 4) there is a strong showing of agency bad faith or improper behavior." *Id*. at 1246 n.1 (citing *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436-37 (9th Cir. 1988)).

There are several areas of legitimate discovery that Plaintiffs intend to pursue; the following list is not meant to be exhaustive but demonstrates that Track Two is the right track.

First, Plaintiffs have alleged that "InfiLaw officers have information and believe that during the prior Administration one or more DOE officials coerced, pressured, or significantly encouraged the ABA to take adverse accreditation actions against for-profit law schools, including law schools owned by InfiLaw." Compl. ¶ 56; *see also id*. ¶ 57. Plaintiffs are entitled to discovery regarding this allegation. If former DOE officials coerced, pressured, or significantly encouraged the ABA to take adverse action, it would mean that the ABA was acting as a state actor subject to the Due Process Clause of the Fifth Amendment. *See id*. ¶ 55; *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) ("We have … held that a challenged activity may be state action when it results from the State's exercise of 'coercive power,' [or] when the State provides 'significant encouragement, either overt or covert'") (citation omitted); *Andrews v. Fed. Home Loan Bank*, 998 F.2d 214, 217 (4th Cir. 1993) ("A private party can be deemed a state actor … when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state"). Significantly, Plaintiffs' Fifth Amendment due process claim is *not* a claim that may be confined to the administrative record. Plaintiffs' Fifth Amendment due process claim is separate from their

common law due process claim. *Compare* Compl. ¶¶ 46-53 *with id.* ¶¶ 54-59. Plaintiffs are entitled to appropriate discovery in support of their Fifth Amendment due process claim. *Cf. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 853 F. Supp. 837 (E.D. Pa. 1994) (permitting law school to take discovery from ABA in antitrust challenge to ABA's standards).

Second, Plaintiffs contend that the ABA's accreditation decision with respect to Florida Coastal is inconsistent with its decision and public statement regarding the Western Michigan University Thomas M. Cooley Law School ("Cooley"). *See* Compl. ¶¶ 118-121; *see also* Doc. 19-1 at pp. 43-49 (ABA decision and statement on Cooley). The ABA decided that Cooley was in compliance with ABA standards because of the "concrete steps" taken by Cooley with respect to its admission policy and practices. Doc. 19-1 at p. 49. The ABA did not apply the "concrete steps" test to Florida Coastal. If it had, the law school would have easily passed. Due process and Department of Education regulations require an accrediting agency to consistently apply its accreditation standards. *See* 34 C.F.R. § 602.18(a), (b); Compl. ¶¶ 45, 52. Plaintiffs are entitled to discover whether the ABA has failed to apply its standards consistently. And Cooley is not the only example of the ABA applying its standards in a seemingly inconsistent manner. In July 2018, the ABA released a public statement regarding its a decision on North Carolina Central University School of Law ("NCCU"). As to NCCU, the ABA applied the same "concrete steps" test it applied to Cooley, but not to Florida Coastal. ABA Section of Legal Educ. and Admissions to the Bar, *Accreditation Committee Decision*, *Notice of Law School's Demonstrating Compliance With Standard 501(b), North Carolina Central University School of Law* (June 2018) (Exhibit 1).

Third, a court may go beyond the administrative record, under the first *PEACH* category, where an agency has failed to explain its decision. *See PEACH*, 87 F.3d at 1246 n.1. Here,

5

Plaintiffs have alleged that the ABA has not explained the key aspects of its decision or else has not provided an adequate explanation. *See*, *e.g.*, Compl. ¶¶ 73, 76-77, 99, 102.

Fourth, discovery beyond the administrative record is permitted if "it appears that the agency relied on materials not included in the record." *PEACH*, 87 F.3d at 1246 n.1 (second category). The ABA's Managing Director, Barry Currier, has been quoted in the ABA's own publication as saying that the ABA uses a "magic machine" that analyzes a law school's data and "spit[s] out" "triggers or flags" for further inquiry. Stephanie Francis Ward, *ABA Legal Ed Council Approves Proposed Rule Change to End Admission Test Requirement*, ABA Journal (May 11, 2018) (attached as Exhibit 2).

> Currier said that the section gets a lot of information from law schools' annual questionnaires. "We run all those questionnaires through our magic machine. All schools that trip triggers or flags are spit out," Currier says. "It may be that on the basis of professional judgment there is no need to inquire, but there are some things that cause us to say: 'We need to have a conversation with the school.'"

*Id*. In none of its accreditation decisions has the ABA ever explained how this "magic machine" was used with respect to Florida Coastal. The law school is entitled to discover what use was made of the magic machine, how it works, and what criteria cause it to trip triggers or spit out flags. Plaintiffs are entitled to learn about the ABA's use and reliance upon this automated accreditation analysis.

Fifth, Plaintiffs contend that relevant ABA accreditation standards, *see* Compl. ¶¶ 26-29, are vague and lack objective metrics for determining compliance or noncompliance, *see id*. ¶¶ 32-33, 78. Discovery may go beyond the administrative record where "technical terms or complex subjects need to be explained." *PEACH*, 87 F.3d at 1246 n.1 (third category). The ABA Council Chair has herself called the ABA's accreditation standards "fuzzy and hard to enforce." Compl. ¶ 33; Doc. 19-1 at p. 41. Why the ABA has elected to write and keep its

6

standards vague and subjective is a proper subject for discovery.

Sixth, Plaintiffs have alleged that "InfiLaw officers have information and believe that some ABA officials are biased against InfiLaw-owned law schools because of their proprietary status." Compl. ¶ 58. In the not too distant past, the ABA would not suffer proprietary law schools to be accredited. *See id*. ¶ 59. Alleged bias is a proper subject of discovery covered by the fourth *PEACH* category. *See* 87 F.3d at 1246 n.1; *see also Prof'l Massage*, 781 F.3d at 177-78 (explaining that a court "may be justified in conducting a more searching inquiry into the motivations of administrative decisionmakers in the case of 'a strong showing of bad faith or improper behavior'"); *Wards Corner Beauty Acad. v. Nat'l Accrediting Comm'n of Career Arts & Sciences*, No. 2:16cv639, 2017 WL 5712120, at *6 (E.D. Va. Nov. 24, 2017) (noting that "some discovery was permitted in this case" concerning accreditor bias); *Auburn Univ. v. S. Ass'n of Colls. & Schs., Inc.*, 489 F. Supp. 2d 1362, 1376 (N.D. Ga. 2002) (permitting discovery into accreditor's alleged bias).

In sum, there are many areas in which Plaintiffs may legitimately pursue discovery in this case. At the very least, it clearly would be premature to conclude at this time that Plaintiffs must be denied all discovery. The scope of discovery in this case should not and cannot be made in the context of a motion for track redesignation. Whether Plaintiffs are entitled to discovery of course depends on what discovery they request. Plaintiffs have not, however, propounded discovery at this early stage. Once Plaintiffs have issued their specific discovery requests, and the ABA has raised its objections, the Court may decide the discovery issues in a concrete setting.

For the foregoing reasons, this action should remain on Track Two, and Defendants' motion to put it on Track One should be denied.

Respectfully submitted,

Mark G. Alexander
Florida Bar No. 434078
Kelly DeGance
Florida Bar No. 0606022
ALEXANDER DEGANCE BARNETT P.A.
1500 Riverside Avenue
Jacksonville, Florida 32204
(904) 345-3277
kelly.degance@adblegal.com
mark.alexander@adblegal.com

<u>/s/ H. Christopher Bartolomucci</u>
Paul D. Clement*
Viet D. Dinh*
H. Christopher Bartolomucci*
KIRKLAND & ELLIS LLP
655 15th Street, NW
Washington, DC 20005
(202) 879-5000
paul.clement@kirkland.com
viet.dinh@kirkland.com
cbartolomucci@kirkland.com

*Admitted *pro hac vice*

*Counsel for Plaintiffs*
*Florida Coastal School of Law, Inc.*
*and InfiLaw Corporation*

Dated: August 10, 2018

## CERTIFICATE OF SEVICE

I hereby certify that on August 10, 2018, I caused the foregoing to be electronically filed with the Clerk of Court by using the CM/ECF system, which will send notice of this filing to all counsel of record.

/s/ H. Christopher Bartolomucci
H. Christopher Bartolomucci

# EXHIBIT 1



ACCREDITATION COMMITTEE DECISION

NOTICE OF LAW SCHOOL'S DEMONSTRATING COMPLIANCE WITH STANDARD 501(b)

North Carolina Central University School of Law

June 2018
_____

At its June 28-29, 2018 meeting, the Accreditation Committee of the Section of Legal Education and Admissions to the Bar (the "Committee") considered the status of the North Carolina Central University School of Law (the "Law School") regarding its non-compliance with Standard 501(b) and Interpretation 501-1.

Following consideration of the record in the matter and the Law School's appearance at its June 2018 meeting, the Committee concluded that the concrete steps taken by the Law School with respect to its admissions policy and practices demonstrated the Law School's compliance with Standard 501(b) and Interpretation 501-1. North Carolina Central University School of Law remains an approved law school.

# EXHIBIT 2

  

NEWS▾  IN-DEPTH▾  BLAWGS▾  ABOUT▾    Search    Submit

Home  /  Daily News  /  ABA Legal Ed council approves proposed rule…

ABA

# ABA Legal Ed council approves proposed rule change to end admission test requirement

BY STEPHANIE FRANCIS WARD (HTTP://WWW.ABAJOURNAL.COM/AUTHORS/20/)

POSTED MAY 11, 2018, 1:19 PM CDT

Like 120  Share   Tweet   Share   ▲▼ submit



*Barry Currier, the ABA's managing director of accreditation and legal education. ABA Journal file photo by the Canadian Press Images/Michael Desjardins.*

**Updated:** A proposed revision to remove an admission test requirement for accredited law schools was approved Friday by the council of the ABA Section of Legal Education and Admissions to the Bar—as was a plan to reorganize the section.

Under the reorganization plan, the council will absorb the accreditation committee and the standards review committee. The council convened in Washington, D.C., on Friday.

The admission test revision proposes cutting Standard 503, which requires an admission exam, and beefing up Standard 501 to include the use of admission credentials and academic attrition when determining accreditation compliance. The current version of Standard 503 requires that law schools using alternate admissions tests to the LSAT demonstrate that the alternate exams are valid and reliable in determining whether a candidate can complete the school's legal education program.

Under ABA rules, standards revisions go to the House of Delegates. The House can send a proposed rule back to the council twice for review with or without recommendations, but the council has the final decision on matters related to law school accreditation.

Regarding the section's reorganization, any changes for related rules go to the House for concurrence, and bylaw changes go to the Legal Ed section and the Board of Governors for approval, according to a meeting summary (https://www.americanbar.org/content/dam/aba/administrative/legal_education_and_admissions_to_the_bar/2018_may_legal_ed_dc_summary_of_meeting.authcheckdam.p the council posted Monday.

The standards revisions could go to the House of Delegates as early as August, as could bylaw changes, said Barry Currier, the ABA's managing director of accreditation.

In March 2017, another proposed revision to the admissions test standard—this one stating that the council would establish a process to determine the reliability and validity of other tests—was sent out for notice and comment. The council eventually decided not to pursue that proposed revision.

The council's vote Friday on the revisions of standards related to admissions tests was 9-8. Proposed revisions with close votes usually don't go to the House of Delegates, said council chair Maureen O'Rourke, but she felt comfortable moving it forward given the length of time that the matter has been discussed.

Regarding concerns about how the section will monitor law schools if there's not an admission test requirement, Currier said that the section gets a lot of information from law schools' annual questionnaires.

"We run all those questionnaires through our magic machine. All schools that trip triggers or flags are spit out," Currier says. "It may be that on the basis of professional judgment there is no need to inquire, but there are some things that cause us to say: 'We need to have a conversation with the school.'"

Kellye Testy, president and CEO of the Law School Admission Council, told the ABA Journal that her group is pleased the proposed changes to the standards continue to encourage law schools to use valid and reliable admissions exams.

"We expect that our member schools will continue to use the LSAT for substantially all of their admissions to provide transparency and fairness by evaluating all applicants using common and consistent standards," she wrote in an email. "As a result, while these changes shift the responsibility for fair admission practices from the ABA to law schools, we do not anticipate significant changes for the vast majority of law schools or their applicants."

Also on Friday, the council approved revisions to six other standards:

- Add "gender identity" to Standards 205 and 206, which address diversity, nondiscrimination and equal opportunity in legal education. The proposal states that the revisions would not require religiously affiliated groups to act inconsistently with elements of their religious beliefs.

- Change language in Standard 303, which focuses on curriculum, and 304, which addresses experiential courses, to make clear that the classes be "primarily experiential in nature," and that direct supervision from faculty is required for simulation and clinic courses, as well as field placements.

- Change language in Standard 306 to allow up to one-third of credits to be obtained through distance education, and the option of giving 10 online credits for first-year curriculum. The current version of Standard 306 limits online credits to 15, unless the section gives a law school leeway for more.

- Delete language in Standard 601, which addresses law school libraries, that requires written assessments of the facilities during the accreditation process.

Like the admissions test revisions, these changes could go to the House of Delegates as early as August, according to Currier.

*Updated May 14 at 1:30 p.m. to add additional standards revisions.*

     

Copyright 2018 American Bar Association. All rights reserved.