FLORIDA COASTAL SCHOOL OF
LAW, INC.; and INFILAW CORPORATION,

      *Plaintiffs,*

      v.                                  Case No.: 3:18-cv-00621-BJD-JBT

AMERICAN BAR ASSOCIATION;
COUNCIL OF THE SECTION OF LEGAL
EDUCATION AND ADMISSIONS TO THE
BAR, AMERICAN BAR ASSOCIATION; and
ACCREDITATION COMMITTEE OF THE
SECTION OF LEGAL EDUCATION AND
ADMISSIONS TO THE BAR, AMERICAN
BAR ASSOCIATION,

      *Defendants.*

_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY**
**JUDGMENT AND MOTION FOR RELIEF UNDER RULE 56(D)**

Mark G. Alexander
Florida Bar No. 434078
ALEXANDER DEGANCE BARNETT P.A.
1500 Riverside Avenue
Jacksonville, Florida 32204
(904) 345-3277
mark.alexander@adblegal.com

Paul D. Clement*
H. Christopher Bartolomucci*
KIRKLAND & ELLIS LLP
655 15th Street, NW
Washington, DC 20005
(202) 879-5000
paul.clement@kirkland.com
cbartolomucci@kirkland.com
*Admitted *pro hac vice*

*Counsel for Plaintiffs Florida Coastal School of
Law, Inc. and InfiLaw Corporation*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**

**BACKGROUND** ................................................................................................ **1**

   **A.**   Florida Coastal School of Law ......................................................... 1
   **B.**   The ABA and Its Accreditation Standards ................................... 7
   **C.**   The ABA Decisions at Issue ........................................................... 8
   **D.**   Procedural History of This Case .................................................. 10

**SUMMARY JUDGMENT RULES** .......................................................... **10**

**ARGUMENT** ............................................................................................... **11**

   **I.**    The Summary Judgment Motion Should Be Denied
         or Deferred Pending Discovery ..................................................... 11
   **II.**   The ABA's Decisions on Coastal Are Inconsistent With Other
         Recent ABA Decisions, Yet the ABA Refused Even to Consider
         Its Own Precedents or Coastal's Arguments Based on Those Precedents ............... 17
   **III.**  The ABA's Decisions Are Arbitrary and Capricious
         and Violate Due Process ................................................................. 22
   **IV.**  Coastal Has Stated a Claim Under the Fifth Amendment
         and Is Entitled to Discovery on That Claim ............................... 26

**CONCLUSION** ......................................................................................... **28**

**CERTIFICATE OF SERVICE**

# TABLE OF AUTHORITIES

**Cases**

*Am. Wild Horse Pres. Campaign v. Perdue,*
    873 F.3d 914 (D.C. Cir. 2017) ............................................... 22

*Andrews v. Fed. Home Loan Bank,*
    998 F.2d 214 (4th Cir. 1993) ................................................. 26

*Animal Def. Council v. Hodel,*
    840 F.2d 1432 (9th Cir. 1988) ............................................... 13

*Auburn Univ. v. S. Ass'n of Colls. & Schs., Inc.,*
    489 F. Supp. 2d 1362 (N.D. Ga. 2002) .................................. 16

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,*
    531 U.S. 288 (2001) ............................................................. 26

*Bristol Univ. v. Accrediting Council for Indep. Colls. & Schs.,*
    691 F. App'x 737 (4th Cir. 2017) .......................................... 17

*Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.,*
    403 F.3d 771 (D.C. Cir. 2005) .............................................. 18

*Burlington Truck Lines, Inc. v. United States,*
    371 U.S. 156 (1962) ............................................................. 21

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. EPA,*
    846 F.3d 492 (2d Cir. 2017) ................................................. 24

*Chi. Sch. of Automatic Transmissions, Inc. v. Accreditation All. of Career Schs. & Colls.,* 44
    F.3d 447 (7th Cir. 1994) .................................................. 18, 22

*Clark v. Coats & Clark, Inc.,*
    929 F.2d 604 (11th Cir. 1991) ............................................... 10

*Cleveland Const., Inc. v. NLRB,*
    44 F.3d 1010 (D.C. Cir. 1995) .............................................. 18

*Cowan v. J.C. Penney Co.,*
    790 F.2d 1529 (11th Cir. 1986) ............................................. 11

*Doubleday Broad. Co. v. FCC,*
    655 F.2d 417 (D.C. Cir. 1981) .............................................. 18

*Edward Waters Coll., Inc. v. S. Ass'n of Colls. & Schs., Inc.,*
    No. 3:05-cv-180, 2005 WL 6218035 (M.D. Fla. Mar. 11, 2005) ...................... 17, 22

*Fernandez v. Bankers Nat'l Life Ins. Co.,*
    906 F.2d 559 (11th Cir. 1990) ............................................... 11

*Fla. Coll. of Bus. v. Accrediting Council for Indep. Colls. & Schs.,*
    954 F. Supp. 256 (S.D. Fla. 1996) ......................... 17, 22, 23, 24

*Gutierrez v. Lynch,*
    834 F.3d 800 (7th Cir. 2016) ................................................. 21

*Haves v. City of Miami*,
  52 F.3d 918 (11th Cir. 1995) ............................................................................ 10

*Hiwassee Coll., Inc. v. S. Ass'n of Colls. & Schs.*,
  531 F.3d 1333 (11th Cir. 2008) ................................................................ 17, 22, 26

*Jeffery v. Sarasota White Sox. Inc.*,
  64 F.3d 590 (11th Cir. 1995) ............................................................................ 10

*Judulang v. Holder*,
  565 U.S. 42 (2011) ............................................................................................ 22

*LeMoyne-Owen Coll. v. NLRB*,
  357 F.3d 55 (D.C. Cir. 2004) ........................................................................... 20

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*,
  853 F. Supp. 837 (E.D. Pa. 1994) ................................................................... 14

*Med. Inst. of Minn. v. Nat'l Ass'n of Trade & Tech. Schs.*,
  817 F.2d 1310 (8th Cir. 1987) ......................................................................... 17

*Miccosukee Tribe v. United States*,
  No. 04-21448, 2008 WL 2967654  (S.D. Fla. July 29, 2008) ........................... 14

*Mize v. Jefferson City Bd. of Ed.*,
  93 F.3d 739 (11th Cir. 1996) ........................................................................... 10

*Nat'l Fed'n of Fed. Emps. v. FLRA*,
  412 F.3d 119 (D.C. Cir. 2005) ......................................................................... 18

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*,
  494 F.3d 188 (D.C. Cir. 2007) ......................................................................... 25

*Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*,
  87 F.3d 1242 (11th Cir. 1996) ............................................................... 13, 15, 16

*Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Schs. and Colls.*,
  781 F.3d 161 (4th Cir. 2015) ..................................................................... passim

*Ramaprakash v. FAA*,
  346 F.3d 1121 (D.C. Cir. 2003) ....................................................................... 20

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943) ............................................................................................ 21

*Sierra Club, Inc. v. Leavitt*,
  488 F.3d 904 (11th Cir. 2007) ......................................................................... 14

*Snook v. Trust Co.*,
  859 F.2d 865 (11th Cir. 1988) ................................................................... 11, 12

*Wards Corner Beauty Acad. v. Nat'l Accrediting Comm'n of Career Arts & Sciences*,
  No. 2:16cv639, 2017 WL 5712120 (E.D. Va. Nov. 24, 2017) ......................... 16

*WSB-TV v. Lee*,
  842 F.2d 1266 (11th Cir. 1988) ....................................................................... 11

**Statutes**

20 U.S.C. § 1099b ................................................................................................ 13

**Rules and Regulation**

Fed. R. Civ. P. 26 ........................................................................................................ 12

Fed. R. Civ. P. 30 ........................................................................................................ 12

Fed. R. Civ. P. 33 ........................................................................................................ 12

Fed. R. Civ. P. 34 ........................................................................................................ 12

Fed. R. Civ. P. 56 ........................................................................................... 1, 10, 11, 13

M.D. Fla. Loc. R. 3.05 ................................................................................................. 12

34 C.F.R. § 602 .................................................................................................. 15, 17, 19

Pursuant to Fed. R. Civ. P. 56, Plaintiffs respectfully submit this opposition to Defendants' motion for summary judgment (Doc. 68) ("Mot."). Pursuant to Rule 56(d), the summary judgment motion should be denied or deferred because the motion is premature. Plaintiffs have outstanding discovery requests, and the Court should not consider any summary judgment motion until Plaintiffs have had a sufficient period of time and opportunity to engage in discovery. Apart from Rule 56(d), Defendants' motion fails on the merits because there are genuine issues of material fact and Defendants are not entitled to judgment as a matter of law.

## BACKGROUND

### A. Florida Coastal School of Law

Plaintiff Florida Coastal School of Law, Inc., operates a law school, the Florida Coastal School of Law ("Coastal" or "the law school"), in Jacksonville, Florida. Plaintiff InfiLaw Corporation ("InfiLaw") owns the law school. *See* Decl. of Scott DeVito ¶ 1.

Coastal was founded in 1996, was provisionally accredited by the American Bar Association ("ABA") in 1999, and has been fully accredited by the ABA since 2002. Coastal is committed to the professional preparation of its students, service to underserved communities, and accountability of the faculty for student learning outcomes. Coastal provides opportunities for persons who, because of background, status, or historical disadvantage, may have limited access to legal education. Coastal has produced more than 5,000 graduates who have pursued successful legal careers in a wide variety of practice areas in 49 states and in countries around the world. *See* DeVito Decl. ¶ 2.

Several years ago, Coastal saw its first-time bar pass results decline and attrition rates increase. But Coastal took action to reverse these trends, and has had success in doing so. In 2016, Coastal raised its admissions standards to increase the average LSAT scores and other incoming credentials of its students. Coastal also implemented numerous changes to its

academic program, academic support, and bar preparation efforts. *See* DeVito Decl. ¶ 3; Doc. 68-1 at pp. 149-157 (ABA hearing transcript); Doc. 30-7 at pp. 8-13 (same). The following chart lists 18 concrete steps taken by Coastal since January 2016 to improve its outcomes. *See* Florida Coastal School of Law's Request to the ABA Council To Find Florida Coastal Fully In Compliance with the Standards at 14-15 ("FCSL Request"), attached as Ex. 1 to DeVito Decl.:

| Date | Concrete Step |
|---|---|
| January 2014 | Modification of teaching method in Professional Responsibility class resulting in greatly increased first time pass rate on MPRE and improving student multiple-choice test taking skills. |
| November 2014 | The LGPA at which a student was academically dismissed was raised from 1.6 at the end of 1L first semester, 1.9 at the end of the 1L second semester, and 2.0 for all following semesters, to a flat 2.0 for any semester. |
| August 2015 | Redesign Academic Kick-Off to focus on rigor, student grading, and academic policies. |
| October 2015 | Required courses were increased to 6 credits of civil procedure (formerly 4 credits), 6 credits of Torts (formerly 5 credits), students must take each of Business Associations, Family Law, and Trusts and Estates (formerly students only had to take 2 out of the 3 classes), and 6 credits of Bar Preparation classes (formerly none mandated). |
| October 2015 | Students were required to take 6 credits of experiential learning – 3 of which must be a live client experience. |
| December 2015 | All graduates would be provided BarBri post-graduation at no additional cost. |
| January 2016 | Implementation of Academic Advising Fairs. |
| January 2016 | Creation of the Writing Center pairing students with upper-level writing fellows to provide peer-based assistance with IRAC and legal writing. |
| February 2016 | Raised target entering credentials for Fall 2016 to 143 bottom quartile LSAT. |
| May 2016 | Incorporation of common questions in final exams to provide objective longitudinal data for cohort comparison in Civil Procedure, Contracts, Criminal Law, Property, and Torts. |
| June 2016 | Discontinuation of the alternative admission program (AAMPLE). |
| August 2016 | Enrolled a fall 2016 class with a 143 25th percentile quartile LSAT. |
| August 2016 | Adoption of new academic policies to improve consistency between classes and improve student outcomes. |
| August 2016 | Bar preparation classes (California Law Survey, Florida Law Survey, Georgia Law Survey, National Law Survey, Texas Law Survey, Uniform Law Survey) were redesigned and from this point forward are taught by full-time faculty. |
| August 2016 | Raised target entering credentials for calendar year 2017 to a 145 25th percentile; no students with an LSAT below 143. |
| January 2017 | Creation of Academic Programs Director positions – staffed with full-time faculty. |
| August 2017 | Enrolled a 1L class for calendar year 2017 with LSAT quartiles: 145, 148, 151. No student with an LSAT below 143. |
| August 2017 | Implementation of Studying the Law I workshop. |
| August 2017 | Raised target entering credentials for calendar year 2018 to a 147 25th percentile; no students with an LSAT below 145. |
| January 2018 | Implementation of Studying the Law II workshop. |
| February 2018 | Raised target entering credentials for calendar year 2018 to increase UGPA quartiles. |
| April 2018 | Florida Bar Results of 62.1%, 4th in the State and 4.2 points above the state average |

14

| August 2018 | Enrolled a 1L class for calendar year 2018 with LSAT quartiles: 147, 150, 152 and UGPA quartiles: 2.8, 3.12, 3.35 |
| September 2018 | Florida Bar Results of 62.5%, 7th in the State and 4.7 points below the state average |

As a result of the concrete steps taken by Coastal, its first-time bar passage rates have increased in each of the last three administrations of the Florida bar. *See* DeVito Decl. ¶ 3.

*February 2018 Bar.* The first-time pass rate of Coastal graduates who took the February 2018 Florida bar exam was 62.1%. Coastal's pass rate ranked fourth out of 11 law schools in Florida. Coastal's 62.1% pass rate was 4.2 percentage points *above* the Florida average pass rate of 57.9%. Coastal's 62.1% pass rate on the February 2018 bar was a significant improvement over Coastal's 25.0% first-time pass rate on the February 2017 Florida bar. *See* DeVito Decl. ¶ 4; FCSL Request at 2, 9.

*July 2018 Bar.* The first-time pass rate of Coastal graduates who took the July 2018 Florida bar exam was 62.5%. Coastal's pass rate ranked seventh out of 11 law schools in Florida. Coastal's 62.5% pass rate was only 4.7 percentage points below the Florida average pass rate of 67.2%. Coastal's 62.5% pass rate on the July 2018 bar was a sizable improvement over Coastal's 47.7% first-time pass rate on the July 2017 Florida bar. *See* DeVito Decl. ¶ 5; FCSL Request at 2, 9.

*2018 Calendar Year.* Combining the February and July bar results, for calendar year 2018, Coastal's first-time pass rate was 62.4%, which was only 2.7 percentage points below the Florida average pass rate of 65.1%. Indeed, Coastal's pass rate compares favorably to the University of Florida, a tier one law school, which had a first-time Florida pass rate of 67.9% for calendar year 2018. *See* DeVito Decl. ¶ 6; FCSL Request at 2, 9.

Notably, the students admitted to Coastal in 2016 and later years under the heightened admission standards have not yet graduated or sat for the bar. Thus, the improved first-time bar pass results seen in 2018 should continue when those students take the bar in 2019 and later years. *See* DeVito Decl. ¶ 7.

*Entering Credentials.* As a result of the law school's heightened admissions standards, Coastal's 2017 entering class had LSAT quartiles of 145, 148, 151. Coastal's 2018 entering class had even higher LSAT quartiles of 147, 150, 152—with no applicant offered admission with an LSAT score below 145. *See* DeVito Decl. ¶ 8; Doc. 34-2 at p. 26. Coastal's 150 median LSAT is at or above 49 other ABA accredited law schools, based on 2017 data. *See* DeVito Decl. ¶ 8; Doc. 34-2 at pp. 58-59.

*Attrition Rates.* Law students with better entering credentials are less likely to be academically dismissed. Therefore, Coastal's new admissions standards and higher LSAT scores will reduce the attrition rate. *See* DeVito Decl. ¶ 9; FCSL Request at 13 (citing research showing that "as median LSAT increases (as it has at Florida Coastal), attrition rates decrease (as they have, and will continue to decline, at Florida Coastal)."). The Spring 2018 entering class consisted of 19 students, four of whom were academically dismissed at the end of the first semester, for an attrition rate of 21%. *See* DeVito Decl. ¶ 9; Doc. 34-2 at pp. 78-79. This attrition rate was affected by the class size. If three rather four students had been academically dismissed, the attrition rate would have been 16%, five percentage points lower. It should be noted that Coastal academically dismisses students who, at the end of any semester, have a cumulative GPA of 2.0 or less, a much more rigorous standard than at some other schools. Coastal's models predict that the attrition rate for the Fall 2018 entering class will be below 20%. *See* DeVito Decl. ¶ 9; FCSL Request at 13.

*Cohort Default Rates.* The U.S. Department of Education ("DOE") calculates defaults on federal student loans. The cohort default rates available from DOE for Coastal students are low:

| Year | % in Default |
|------|--------------|
| 2013 | 2.0% |
| 2014 | 1.7% |
| 2015 | 2.5% |

*See* DeVito Decl. ¶ 10; FCSL Request 12-13.

### B. The ABA and Its Accreditation Standards

Coastal is accredited by the Council of the Section on Legal Education and Admissions to the Bar ("Council") and was accredited by the Accreditation Committee ("Committee") until its abolition this year. The ABA has issued Standards and Rules of Procedure for Approval of Law Schools ("Standards"). *See* Doc. 30-1. The following standards are pertinent in this case.

Standard 301(a): "A law school shall maintain a rigorous program of legal education that prepares its students, upon graduation, for admission to the bar and for effective, ethical, and responsible participation as members of the legal profession."

Standard 309(b): "A law school shall provide academic support designed to afford students a reasonable opportunity to complete the program of legal education, graduate, and become members of the legal profession."

Standard 501(b): "A law school shall only admit applicants who appear capable of satisfactorily completing its program of legal education and being admitted to the bar."

Interpretation 501-1: "Among the factors to consider in assessing compliance with this Standard are the academic and admission test credentials of the law school's entering students, the academic attrition rate of the law school's students, the bar passage rate of its graduates, and the effectiveness of the law school's academic support program."

Standard 316 is also highly relevant in this case. Captioned "Bar Passage," Standard 316 provides in part as follows:

> (a) A law school's bar passage rate shall be sufficient, for purposes of Standard 301(a), if the school demonstrates that it meets any one of the following tests:
> (1) That for students who graduated from the law school within the five most recently completed calendar years:
> (i) 75 percent or more of these graduates who sat for the bar passed a bar

examination; or
　　(ii) in at least three of these calendar years, 75 percent of the students graduating in those years and sitting for the bar have passed a bar examination.

Unlike the previously cited standards, Standard 316 provides an objective test for assessing compliance. Significantly, Coastal's ultimate bar passage rate fully complies with Standard 316. *See* DeVito Decl. ¶ 11; FCSL Request at 11. The ABA has never found Coastal out of compliance with this standard specifically governing bar passage. *See* DeVito Decl. ¶11. Coastal's ultimate bar pass rates are:

| Year | Ultimate Pass Rate |
|------|--------------------|
| 2013 | 89.5% |
| 2014 | 86.4% |
| 2015 | 80.7% |
| 2016 | 74.6% |
| 2017 | 65.8% |

*Id*. Thus, the very large majority of those who graduated from Coastal from 2013 to 2017 have passed the bar examination. *Id*. ¶ 12. Furthermore, the figures for 2016 and 2017 will rise because not all individual 2018 bar pass information has been received and processed by Coastal and because some graduates are still sitting for the bar exam. *Id*.

C.　　The ABA Decisions at Issue

On March 17, 2018, Coastal appeared before the Committee for a hearing. *See* Docs. 30-7 & 30-8 (transcript). On April 27, 2018, the Committee released to Coastal a decision concluding that the law school is not in compliance with Standards 301(a), 309(b), and 501(b) and Interpretation 501-1. *See* Doc. 19-1 at pp. 13-21. The Committee concluded that "the Law School's efforts and programmatic changes made have not sufficiently improved its outcomes." *Id*. at p. 19 (Concl. 1). The Committee did not, however, identify what outcomes Coastal needed to be in compliance or whether Coastal was close or far from having "sufficiently improved outcomes." The Committee also found, without any explanation, that Coastal's issues of

8

noncompliance with the Standards "are substantial and have been persistent." *Id*. (Concl. 3). The Committee imposed specific remedial actions on Coastal. *See id*. at pp. 19-21 (Concl. 4-5).

On May 29, 2018, Coastal appealed the Committee's decision to the Council. *See* Doc. 34-2. The Council held a hearing on Coastal's appeal on August 2, 2018. *See* Doc. 68-1 at pp. 143-198 (transcript). On August 29, 2018, the Council denied the law school's appeal and affirmed the Committee's decision. *See* Doc. 60-1; *see also* Doc. 68-1 at pp. 237-249 (corrected Council decision). The Council's decision stated that Coastal's evidence of compliance with the standards did not "provide a sufficient basis on which to determine that the Law School is now in compliance with the Standards at issue." Doc. 60-1 at pp. 3-4. The Council also stated that "although the Law School has changed its admissions policy and made programmatic changes … these changes have not been in place for a sufficient period of time and have not provided sufficient evidence that they are effective." *Id*. at p. 7. The Council did not, however, explain what a "sufficient period of time" or "sufficient evidence" would be. The Council, like the Committee, did not say whether Coastal was on the right track or the wrong track or how close or far Coastal was to returning to compliance.

Importantly, the Council refused to consider its own recent decisions on other law schools or Coastal's arguments based on those precedents. The Council "reject[ed] the Law School's position that the Council should base its decision on the comparisons to other law schools that the Law School provided." *Id*. at p. 5. The Council stated that it "does not base its decision on comparisons between the Law School and other law schools." *Id*. at pp. 5-6.

The Council did not attempt to defend the Committee's "substantial and persistent" conclusion or venture to explain why that conclusion was correct. The Council imposed specific remedial actions on Coastal. *See id*. at pp. 8-10.

## D. Procedural History of This Case

Plaintiffs commenced this action on May 10, 2018. *See* Doc. 1. Defendants thereafter moved to dismiss or stay the case. *See* Doc. 36. Defendants also moved to switch this case from Track Two to Track One. *See* Doc. 44. Plaintiffs moved for a preliminary injunction, and in response the ABA voluntarily granted Plaintiffs most of the relief they wanted. This Court denied what was left of Plaintiff's preliminary injunction motion. *See* Doc. 39. Plaintiffs filed their First Amended Complaint on September 20, 2018. *See* Doc. 62. Defendants then moved for summary judgment. *See* Doc. 68. On October 18, 2018, the Court denied Defendants' motion to dismiss or stay the case. *See* Doc. 70.

## SUMMARY JUDGMENT RULES

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. *See Mize v. Jefferson City Bd. of Ed.*, 93 F.3d 739, 742 (11th Cir. 1996). The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox. Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). In deciding whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Rule 56(d) provides: "If a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

**ARGUMENT**

**I.      The Summary Judgment Motion Should Be Denied or Deferred Pending Discovery.**

The summary judgment motion is premature because Plaintiffs have outstanding discovery requests and intend to engage in additional discovery. Therefore, Coastal moves the Court to deny or defer consideration of the ABA's motion. *See* Fed. R. Civ. P. 56(d); Decl. of H. Christopher Bartolomucci.

The Eleventh Circuit "has often noted that summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Trust Co.*, 859 F.2d 865, 870 (11th Cir. 1988); *see Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 571 (11th Cir. 1990) (reversing grant of summary judgment "because of the failure of the district court to allow complete discovery"); *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988) (holding that "consideration of defendant's motion for summary judgment in this six-months-old case was erroneous" because plaintiffs were "afforded no opportunity for discovery"); *Cowan v. J.C. Penney Co*., 790 F.2d 1529, 1532-33 (11th Cir. 1986) (holding that "summary judgment was improper as a matter of law" where "the discovery response from [defendant] was still outstanding"). Summary judgment is clearly "premature" where, as here, "the moving party has not answered the opponent's" discovery requests that are "critical to the issues in dispute." *Id*. "If the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials." *Snook*,

859 F.2d at 870.

Plaintiffs have served on the ABA their First Set of Requests for the Production of Documents ("Requests"). *See* Bartolomucci Decl., Ex. 1. The cited declaration explains that the Requests seek documents on such highly relevant matters as (1) the inconsistency between the ABA's decision on Coastal and its other recent decisions on other law schools; (2) whether the government coerced or pressured the ABA to take adverse action against the proprietary InfiLaw schools; and (3) whether ABA officials are biased against for-profit schools. *Id.* The summary judgment motion should be denied or deferred until ABA has produced all non-privileged documents responsive to the Requests. Following Plaintiffs' receipt and review of the requested documents, Plaintiffs may wish to engage in further discovery using the various means allowed by the Rules. *See* Fed. R. Civ. P. 30, 33, 34. Accordingly, summary judgment should not be considered by the Court until Plaintiffs have had a suitable period of time and opportunity to engage in discovery.

The Court has designated this as a Track Two case, *i.e.*, one in which discovery is expected. *See* Doc. 9; M.D. Fla. Loc. R. 3.05. In July 2018, the ABA moved the Court to put the case on Track One, *see* Doc. 44, but the Court has not granted that motion. *See* Plfs.' Opp. to Mot to Redesignate Case (Doc. 56).

The ABA's position is that Plaintiffs are not entitled to discovery. *See* Mot. 15 (urging summary judgment "without discovery"); Doc. 44 at p. 8 ("It is the ABA's view that … no discovery is necessary or appropriate"). But that no-discovery position violates the most fundamental rule governing discovery, which is that a party generally "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Furthermore, the ABA's no-

discovery position is itself a violation of the due process that the ABA owes to Coastal. Accordingly, the Court should issue an order compelling the ABA to produce all non-privileged documents responsive to the outstanding Requests. *See* Fed. R. Civ. P. 56(d)(3) (authorizing the court to issue any "appropriate order" when granting a Rule 56(d) motion).

The ABA argues that review in this case is limited to the accreditation record. The ABA characterizes this case as "an action for review of an administrative record." Doc. 44 at p. 1. Plaintiffs disagree. This is a civil action brought pursuant to the federal question and diversity jurisdiction statutes and 20 U.S.C. § 1099b(f). *See* Am. Compl. ¶¶ 9-11 (Doc. 62). Plaintiffs contend that ABA accrediting decisions violated Coastal's right of due process—a due process right emanating from federal common law (including as informed by federal statutes and regulations) and the Fifth Amendment. *See id.* ¶¶ 42-60, 169-175. In a case such as this one, Coastal is entitled to appropriate discovery—not zero discovery, as the ABA asserts.

This is not an action for review of an administrative record, but even if it were, Plaintiffs would be allowed to take discovery. Although "[t]he focal point for judicial review of an administrative agency's action should be the administrative record," Eleventh Circuit precedent instructs that "certain circumstances may justify going beyond the administrative record." *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) ("*PEACH*"). *PEACH* explained that a court "may go beyond the administrative record" where "1) an agency's failure to explain its action effectively frustrates judicial review; 2) it appears that the agency relied on materials not included in the record; 3) technical terms or complex subjects need to be explained; or 4) there is a strong showing of agency bad faith or improper behavior." *Id.* at 1246 n.1 (citing *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436-37 (9th Cir. 1988)). "In addition, the Eleventh Circuit has recognized that a court may consider

extra-record materials that are necessary to determine whether the agency considered all relevant factors." *Miccosukee Tribe v. United States*, No. 04-21448, 2008 WL 2967654, at *4 (S.D. Fla. July 29, 2008) (citing *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 914 n.16 (11th Cir. 2007)). Plaintiffs intend to pursue discovery falling into these categories.

First, Plaintiffs have alleged that "InfiLaw officers have information and believe that during the prior Administration one or more DOE officials coerced, pressured, or significantly encouraged the ABA to take adverse accreditation actions against for-profit law schools, including law schools owned by InfiLaw." Am. Compl. ¶ 57. Plaintiffs are entitled to discovery regarding this allegation. If former DOE officials coerced, pressured, or significantly encouraged the ABA to take adverse action, it would mean that the ABA was acting as a state actor subject to the Fifth Amendment. *See* Part IV, *infra.* Significantly, Plaintiffs' Fifth Amendment claim is *not* a claim that may be confined to the administrative record. Plaintiffs' Fifth Amendment claim is separate from their common law claim. *Compare* Compl. ¶¶ 47-54 *with id.* ¶¶ 55-60. Plaintiffs are entitled to discovery in support of their Fifth Amendment claim. *Cf. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 853 F. Supp. 837 (E.D. Pa. 1994) (permitting law school to take discovery from ABA in antitrust challenge to ABA's standards).

Second, Plaintiffs contend that the ABA's accreditation decisions on Coastal are inconsistent with the ABA's decision on the Western Michigan University Thomas M. Cooley Law School ("Cooley"). *See* Am. Compl. ¶¶ 120-123; *see also* Doc. 19-1 at pp. 43-49 (ABA decision on Cooley). The ABA decided that Cooley was in compliance with ABA standards because of the "concrete steps" taken by Cooley with respect to its admission policy and practices. Doc. 19-1 at p. 49. But the ABA did not apply the "concrete steps" test to Coastal. If it had, the law school would have easily passed. Due process and DOE regulations require an

accrediting agency to consistently apply its accreditation standards. *See* 34 C.F.R. § 602.18(a), (b). Plaintiffs are entitled to discover whether the ABA has failed to apply its standards consistently. And Cooley is not the only example of the ABA applying its standards in an inconsistent manner. In July 2018, the ABA released a public statement regarding its decision on North Carolina Central University School of Law ("NCCU"). *See* Doc. 56 at p. 11. As to NCCU, the ABA applied the same "concrete steps" test it had applied to Cooley.

Third, a court may go beyond the administrative record, under the first *PEACH* category, where an agency has failed to explain its decision. *See PEACH*, 87 F.3d at 1246 n.1. Here, the ABA has not explained key aspects of its decision or else has not provided an adequate explanation. *See* Part III *infra*; Am. Compl. ¶¶ 75, 78-79, 101, 104.

Fourth, discovery beyond the administrative record is permitted if "it appears that the agency relied on materials not included in the record." *PEACH*, 87 F.3d at 1246 n.1 (second category). The ABA's Managing Director, Barry Currier, has been quoted in the ABA's own publication as saying that the ABA uses a "magic machine" that analyzes a law school's data and "spit[s] out" "triggers or flags" for further inquiry. Doc. 56 at p. 14.

> Currier said that the section gets a lot of information from law schools' annual questionnaires. "We run all those questionnaires through our magic machine. All schools that trip triggers or flags are spit out," Currier says. "It may be that on the basis of professional judgment there is no need to inquire, but there are some things that cause us to say: 'We need to have a conversation with the school.'"

*Id*. In none of its decisions, however, has the ABA explained how this "magic machine" was used with respect to Coastal. The law school is entitled to discover what use was made of the magic machine, how it works, and what criteria cause it to trip triggers or spit out flags. Coastal is entitled to learn about the ABA's use and reliance upon this automated accreditation analysis.

Fifth, Plaintiffs contend that relevant ABA accreditation standards are vague and lack

objective metrics for determining compliance or noncompliance. *See* Am. Compl. ¶¶ 33-34, 80. Discovery may go beyond the administrative record where "technical terms or complex subjects need to be explained." *PEACH*, 87 F.3d at 1246 n.1 (third category). The former ABA Council Chair has called the ABA's accreditation standards "fuzzy and hard to enforce." Doc. 19-1 at p. 41. This is a proper area for discovery.

Sixth, Plaintiffs have alleged that "InfiLaw officers have information and believe that some ABA officials are biased against InfiLaw-owned law schools because of their proprietary status." Am. Compl. ¶ 59. Not long ago, the ABA would not suffer proprietary law schools to be accredited. *See id*. ¶ 60. Alleged bias is a proper subject of discovery covered by the fourth *PEACH* category. *See PEACH*, 87 F.3d at 1246 n.1; *see also Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Schs. and Colls.*, 781 F.3d 161 at 177-78 (4th Cir. 2015) (explaining that a court "may be justified in conducting a more searching inquiry into the motivations of administrative decisionmakers in the case of 'a strong showing of bad faith or improper behavior'"); *Wards Corner Beauty Acad. v. Nat'l Accrediting Comm'n of Career Arts & Sciences*, No. 2:16cv639, 2017 WL 5712120, at *6 (E.D. Va. Nov. 24, 2017) (noting that "some discovery was permitted in this case" concerning accreditor bias); *Auburn Univ. v. S. Ass'n of Colls. & Schs., Inc*., 489 F. Supp. 2d 1362, 1376 (N.D. Ga. 2002) (permitting discovery into accreditor's alleged bias).

In sum, whether or not this action is treated as one for review of an administrative record, Plaintiffs are entitled to discovery. The ABA's motion for summary judgment is therefore premature. This Court should (1) deny or defer the ABA's motion and allow Plaintiffs to a suitable period of time and opportunity for discovery before the Court entertains any summary

judgment motion; (2) order the ABA to respond to Plaintiffs' outstanding Requests and produce all nonprivileged documents responsive to the Requests.

If the Court does not deny or defer the ABA's summary judgment motion pursuant to Rule 56(d), the ABA's motion should be denied on the merits for the reasons that follow.

## II. The ABA's Decisions on Coastal Are Inconsistent With Other Recent ABA Decisions, Yet the ABA Refused Even to Consider Its Own Precedents or Coastal's Arguments Based on Those Precedents.

It is well established that accreditors such as the ABA have a duty under federal common law to provide due process to the schools they accredit. *See Hiwassee Coll., Inc. v. S. Ass'n of Colls. & Schs.*, 531 F.3d 1333, 1335 (11th Cir. 2008); *Edward Waters Coll., Inc. v. S. Ass'n of Colls. & Schs., Inc.*, No. 3:05-cv-180, 2005 WL 6218035 (M.D. Fla. Mar. 11, 2005); *Fla. Coll. of Bus. v. Accrediting Council for Indep. Colls. & Schs.*, 954 F. Supp. 256 (S.D. Fla. 1996); *see also Prof'l Massage*, 781 F.3d 169-70 (citing cases from six other circuits). The ABA does not dispute that it is bound by the common law duty to provide due process.

One of the fundamental requirements of due process is that an accreditor must apply its standards consistently. This requirement serves as a crucial check against arbitrary or biased decision making. One of the DOE's due process regulations is captioned "Ensuring consistency in decision-making." 34 C.F.R. § 602.18. That regulation provides that an accreditor "must consistently apply and enforce [its] standards." *Id.* The common law right of due process surely requires no less. *See Med. Inst. of Minn. v. Nat'l Ass'n of Trade & Tech. Schs.*, 817 F.2d 1310, 1314 (8th Cir. 1987) (an accreditor must treat "similarly situated" schools "similarly"). The contours of the common law right are informed by the DOE's due process regulations. *See Edward Waters*, 2005 WL 6218035, at *5 n.7 (citing 34 C.F.R. § 602.25); *accord Bristol Univ. v. Accrediting Council for Indep. Colls. & Schs.*, 691 F. App'x 737, 741 (4th Cir. 2017).

Perhaps the most glaring violations of due process committed by the ABA in its decisions

on Coastal are (1) the inconsistency between those decisions and other recent ABA decisions on other law schools and, relatedly, (2) the ABA's refusal even to consider its own precedents in connection with its decisions on Coastal or Coastal's arguments based on those precedents.

Courts apply administrative law principles in deciding common law due process claims. *See Prof'l Massage*, 781 F.3d at 170; *Chi. Sch. of Automatic Transmissions, Inc. v. Accreditation All. of Career Schs. & Colls.*, 44 F.3d 447, 450 (7th Cir. 1994). And it is a fundamental principle of administrative law that agencies "act arbitrarily and capriciously when they ignore their own relevant precedent." *Nat'l Fed'n of Fed. Emps. v. FLRA*, 412 F.3d 119, 121 (D.C. Cir. 2005) (brackets and quotation marks omitted); *see also Cleveland Const., Inc. v. NLRB*, 44 F.3d 1010, 1016 (D.C. Cir. 1995) ("The agency is not free to ignore its precedent without explanation."). "Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld." *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005). This means an agency "may not decide a case one way today and a substantially similar case another way tomorrow" without an adequate explanation. *Doubleday Broad. Co. v. FCC*, 655 F.2d 417, 423 (D.C. Cir. 1981).

On April 18, 2018, just nine days before the Committee issued its decision on Coastal, the Committee issued a decision on the Cooley law school. *See* Doc. 19-1 at pp. 43-49. Previously, in a decision issued to Cooley in October 2017, the Committee had concluded that Cooley was not in compliance with Standard 501(b) and Interpretation 501-1. But only six months later, in its April 18, 2018 decision, the Committee reversed course and concluded that Cooley was in compliance with Standard 501(b) and Interpretation 501-1. The Committee publicly explained that it had concluded that Cooley was back in compliance with the ABA

standards because of the "concrete steps taken by the Law School with respect to its admissions policy and practices."  Doc. 19-1 at p. 49.

The inconsistency between the Coastal and Cooley decisions is stark.  The ABA found that Cooley was in compliance with the Standards because Cooley changed its admissions policy and practices in January 2018—only *three months* before the ABA's Cooley decision.  *See* Doc. 19-1 at pp. 44-45 (Finding 5).  Because its changes were so new, Cooley had no actual results to show for its changes at the time of the ABA's decision.  In contrast, Coastal made changes in January 2016, *two years* before Cooley's changes and the ABA's decision.  And Coastal, unlike Cooley, was able to point to improved outcomes in terms of higher LSAT scores and improved bar exam results.  Thus, Coastal, unlike Cooley, had concrete *results* as well as concrete steps.

In July 2018 the ABA also released a public statement regarding its decision on the NCCU law school.  *See* Doc. 56 at p. 11.  The ABA found that NCCU was in compliance with Standard 501(b) and Interpretation 501-1, and in so doing the ABA applied to NCCU the same "concrete steps" test that the ABA had applied to Cooley, but not to Coastal.  *See id*. ("the concrete steps taken by [NCCU] with respect to its admissions policy and practices demonstrated the Law School's compliance").

The ABA's decisions on Cooley and NCCU are flatly inconsistent with its decision on Coastal.  Like Cooley and NCCU, Coastal took "concrete steps" with respect to its admissions policy and practices.  But the ABA did not apply the concrete steps test to Coastal.  By failing to apply its concrete steps test to both law schools, the ABA violated its legal duty under the federal common law (and also the DOE regulations) to "consistently apply and enforce [its] standards." 34 C.F.R. § 602.18.  The facts and circumstances surrounding one law school may differ from

another school, but it is simply unlawful for the ABA to apply different standards to different schools or apply its standards in an inconsistent manner.

The Committee in its decisions on Cooley and Coastal made no effort to reconcile its conflicting decisions, even though they were issued just nine days apart. Nor did the Council in its decision explain the different treatment of Coastal and Cooley/NCCU. In reaching its decision on Coastal, the Council refused to consider its own precedents. The Council "reject[ed] the Law School's position that the Council should base its decision on the comparisons to other law schools that the Law School provided." Doc. 60-1 at p. 5. The Council added that it "does not base its decisions on comparisons between the Law School and other law schools." *Id*. at pp. 5-6. *See also* Mot. 24 (arguing that "[c]omparisons between schools are not helpful").

The Council and the Committee, by refusing to reconcile or even discuss its precedents, violated due process. "[W]here, as here, a party makes a significant showing that analogous cases have been decided differently, the agency must do more than simply ignore that argument." *LeMoyne-Owen Coll. v. NLRB*, 357 F.3d 55, 61 (D.C. Cir. 2004). "In this case, the [ABA] has not provided any explanation—let alone an adequate one—of how its disposition is consistent with its contrary" decisions on Cooley and NCCU. *Id*. at 60. Coastal's appeal submission to the Council extensively discussed Cooley and NCCU and numerous other ABA precedents. *See* Doc. 34-2 at pp. 15-60. But the Council refused to engage Coastal's arguments. The ABA's refusal to consider its own precedents or explain its inconsistent treatment of different law schools is reason enough to set aside the ABA's decisions here. *See Ramaprakash v. FAA*, 346 F.3d 1121, 1124-25 (D.C. Cir. 2003) ("An agency's failure to come to grips with conflicting precedent constitutes an inexcusable departure from the essential requirement of reasoned decision making.") (quotation marks omitted).

The ABA's inconsistent application of its standards has not been lost on observers. Just today, commentator David Frakt, who follows and writes on the ABA and law schools, posted an analysis of the ABA's inconsistent treatment of Coastal, Cooley, NCCU and other schools. *See* DeVito Decl., Ex. 2. "The school with the strongest claim of unfair/inconsistent treatment by the ABA is Florida Coastal," states Frakt. *Id.* The "clear evidence of significant improvements to Coastal's admissions standards" shows that the ABA's treatment of Coastal is "powerful evidence" of "arbitrary and capricious enforcement of the ABA Standards." *Id.*

Although the Council refused even to discuss in its Coastal decision the "concrete steps" test applied to Cooley and NCCU, the ABA's lawyers address this issue in a footnote. *See* Mot. 25 n.13. The ABA's lawyers say two things in that footnote. First, they say that "[t]he Standards do not contain a 'concrete steps' test." *Id.* But that observation hardly helps the ABA. In fact, it makes what the Committee and Council did here *even worse*. The ABA found Cooley and NCCU in compliance based on a test that is not expressly contained in the Standards. The fact that they did so does not excuse their failure to give Coastal the benefit of the same test.

Second, the ABA's lawyers state that "not all 'concrete steps' are equal." *Id.* Coastal "started further back on key criteria than Cooley did." *Id.* But the comparison of Cooley to Coastal does not appear anywhere in the decisions of the Committee or the Council. And it is Administrative Law 101 that an agency may not "defend[ ] an administrative decision on a new ground not set forth in the agency's original decision." *Gutierrez v. Lynch*, 834 F.3d 800, 806 (7th Cir. 2016) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). Under *Chenery*, the ABA's lawyers may not defend the ABA's refusal to explain its inconsistent application of the concrete steps test with an explanation not offered by the ABA itself in its underlying decisions. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) (*Chenery* holds that

"courts may not accept [agency] counsel's *post hoc* rationalizations for agency action"). The ABA's failure to address its inconsistent application of the concrete steps test is reason enough to set aside the ABA decisions at issue.

Furthermore, the idea that not all concrete steps are equal hurts the ABA's position. Coastal's concrete steps, which go back to 2016, have produced concrete results—better entering credentials and better bar results. Cooley's steps, enacted in January 2018, generated no results by the time the ABA found them sufficient three months later.

In sum, the ABA's inconsistent application of the concrete steps test and its refusal even to consider, let alone harmonize, its precedents when deciding Coastal's case is a clear-cut violation of due process. The decisions of the Committee and Council cannot stand.

## III.    The ABA's Decisions Are Arbitrary and Capricious and Violate Due Process.

In deciding common law due process claims, courts apply the tests of administrative law and thus consider whether the accreditor's decision is arbitrary, capricious, unreasonable, an abuse of discretion, not based on substantial evidence, or not in accordance with law. *See Prof'l Massage*, 781 F.3d at 171-72; *Hiwassee Coll.*, 531 F.3d at 1335 & n.4; *Chicago Sch.*, 44 F.3d at 449; *Edward Waters*, 2005 WL 6218035, at *5, *13 n.17; *Fla. Coll. of Bus.*, 954 F. Supp. at 258. An accrediting agency, like an administrative agency, must provide a "reasoned explanation" for its actions. *Judulang v. Holder*, 565 U.S. 42, 53 (2011); *see Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 920 (D.C. Cir. 2017) (The APA "prohibits arbitrary and capricious actions by federal agencies and mandates that they give reasoned explanation for the actions that they do take."). And so it is with accrediting agencies. Due process requires that an accreditor's decision be "in writing and supported by the evidence." *Prof'l Massage*, 781 F.3d at 179.

Like an agency, an accreditor receives "a measure of deference" from a court, *id*. at 171, but not "total[] deference," *id.* at 169, or the great deference that the ABA claims. Indeed,

"judicial oversight of the accreditation process surely has its place," *id*. at 172, because accreditors, "like all other bureaucratic entities, can run off the rails," *id*. at 169. "[A]ccreditors wield enormous power over institutions—life and death power, some might say—which argues against allowing such agencies free rein to pursue personal agendas or go off on some ideological toot." *Id*. at 170.

Furthermore, to satisfy due process, it is not enough for an accreditor to use fair procedure. The *outcome* of the accreditor's process must also comport with due process; the accreditor's decision must be reasoned and explained. *See Fla. Coll. of Bus.*, 954 F. Supp. at 258 (accreditor's "internal rules … provided a fair and impartial procedure" but its decision still had to avoid being "arbitrary, capricious, … or not supported by substantial evidence").

The 2018 decisions of the Committee and the Council reflect all of the worst (and due process violating) tendencies of ABA accreditation decisions in recent years: The decisions find the law school out of compliance with vague standards that lack objective metrics for determining compliance. The decisions fail to provide a reasoned explanation for the conclusion that the law school is not in compliance. The decisions reach conclusions that are contrary to or not supported by the facts found in the decision. The decisions fail to provide any guidance on what the law school must do or show to return to compliance with the Standards.

*The Committee's Decision.* The Committee did not provide a reasoned explanation for its conclusion that Coastal was not in compliance with the standards. The Committee "conclude[d] that the Law School's efforts and programmatic changes made have not sufficiently improved its outcomes." Doc. 19-1 at p. 19 (Concl. 1). The Committee never explained what outcomes would be sufficient or how near or far Coastal was from having sufficient outcomes. Conclusion 1 is also inconsistent with the Committee's finding the changes enacted by Coastal "have not

been in place for a sufficient time to provide evidence that they have been or will be effective in improving the Law School's outcomes." *Id*. at p. 16 (Finding 8). And both Conclusion 1 and Finding 8 fail to consider the results of the February 2018 bar exam, in which Coastal achieved a 62.1% first-time pass rate, a rate above the state average. Coastal gave this information to the Committee on April 16, 2018, the same day it became available, 11 days before the Committee's April 27 decision, but the Committee ignored what was then the most recent and relevant data on bar pass. *See Fla. Coll. of Bus.*, 954 F. Supp. at 259 (granting relief where accreditor disregarded material new information).

The Committee provided no explanation whatsoever for its conclusion that "the issues of non-compliance" with the standards "are substantial and have been persistent." Doc. 19-1 at p. 19 (Concl. 3). This was an important conclusion because the ABA may impose sanctions for "[s]ubstantial or persistent noncompliance with one or more of the Standards." ABA Rule 16(a)(1). The Committee did not explain why the noncompliance was substantial and persistent or even what the test for substantial and persistent noncompliance is.

*The Council's Decision.* The Council decision offered no better explanation than the Committee decision. The Council concluded that the changes enacted by Coastal "have not been in place for a sufficient time and have not provided sufficient evidence that they are effective." Doc. 60-1 at p. 7. Like the Committee, the Council did not explain what amount of time and evidence would be sufficient. This was not just a moving target—it was an invisible target.

The Council did not even attempt to justify the Committee's substantial-and-persistent conclusion. The failure of the Committee and the Council to provide a reasoned explanation for that important conclusion violates due process. *See Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. EPA*, 846 F.3d 492, 521 (2d Cir. 2017) ("An agency interpretation would

surely be 'arbitrary' or 'capricious' if it were … arrived at with no explanation, even if it might otherwise be deemed reasonable on some unstated ground."); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*, 494 F.3d 188, 204 (D.C. Cir. 2007) ("This complete lack of explanation for an important step in the agency's analysis was arbitrary and capricious.").  Notably, the ABA in its summary judgment motion does not defend the substantial-and-persistent conclusion.

Finally, both ABA decisions at issue are arbitrary and capricious because they fail to give meaningful weight to Coastal's continued compliance with Standard 316, the ABA's "Bar Passage" standard.  Even when Coastal's first-time bar pass rates were low or declining, Coastal remained in compliance with Standard 316 based on its ultimate bar passage rate.  Three things stand out about Standard 316 that make it improper for the ABA to have given it such little weight.  *First*, it is the ABA standard specifically governing bar passage.  Standards 301(a), 309(b), and 501(b) concern, respectively, the quality of a law school's legal education, academic support, and admitted applicants.  Bar pass rates are at best a lagging indicator of quality in those areas, but the ABA relies almost exclusively on bar pass rates in assessing Standards 301(a), 309(b), and 501(b).  *Second*, passing the bar on the first try is important, but passing the bar on *some* try is even more important.  A lawyer who passes the bar on a second or later try can have a decades-long career in the law.  Thus, compliance with the ultimate bar pass test in Standard 316 should be at least as important as first-time bar pass.  *Third*, Standard 316 is an objective standard whereas Standards 301(a), 309(b), and 501(b) are not.  As written, those standards lack objective tests for assessing compliance.  They are subjective or, as the Council Chair once said, "fuzzy."  Because those standards are vague, they invite arbitrary and inconsistent application. In sum, it was arbitrary for the ABA to deem Coastal out of compliance with Standards 301(a),

309(b), and 501(b) based mostly on first-time bar pass rates when Coastal was at all times in compliance with Standard 316.

**IV.**     **Coastal Has Stated a Claim Under the Fifth Amendment and Is Entitled to Discovery on That Claim.**

Coastal's complaint clearly asserts a claim that the ABA has violated the Due Process Clause of the Fifth Amendment. *See* Am. Compl. ¶¶ 55-60, 175. The ABA argues that Coastal's Fifth Amendment claim fails as a matter of law and that Coastal is not entitled to discovery on the claim. Mot. 29-30. The ABA is wrong on both counts.

The law does not foreclose Coastal's Fifth Amendment claim; the law authorizes that claim. The Eleventh Circuit has recognized that, although a private accreditor is not a state actor *as a general matter*, there are specific circumstances in which an accreditor's actions will be considered state action subject to the Fifth Amendment. In *Hiwassee College*, the Eleventh Circuit applied *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001), considered whether there was "pervasive entwinement" between the accreditor and the government, and examined "the record before [it]" on that question. *Hiwassee Coll.*, 531 F.3d at 1335 n.3. Here, Coastal alleges that during the prior Administration one or more DOE officials coerced, pressured, or significantly encouraged the ABA to take adverse accreditation action against the for-profit InfiLaw schools. *See* Am. Compl. ¶ 57. In such circumstances, the ABA would be deemed a state actor. *See Brentwood Acad.*, 531 U.S. at 296 ("We have … held that a challenged activity may be state action when it results from the State's exercise of 'coercive power,' [or] when the State provides 'significant encouragement, either overt or covert'") (citation omitted); *Andrews v. Fed. Home Loan Bank*, 998 F.2d 214, 217 (4th Cir. 1993) ("A private party can be deemed a state actor … when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state").

Genuine issues of material fact concerning Coastal's claim preclude summary judgment (and make discovery necessary and proper). In 2017, Daniel Zibel, formerly the DOE Deputy Assistant General Counsel for Postsecondary Education, betraying his apparent hostility toward for-profit law schools, publicly touted on social media as one of his personal "achievements" leading the DOE to impose an "unprecedented restriction on a for-profit law school's" access to the Title IV student loan program. DeVito Decl., Ex. 3. The for-profit law school that Mr. Zibel was referring to was the Charlotte School of Law ("CSL"), an InfiLaw school.

While at the DOE, Mr. Zibel is known to have communicated with the ABA and to have issued demands and orders to the ABA with respect to InfiLaw schools. On February 14, 2017, Mr. Zibel sent ABA Managing Director Barry Currier an email at 10:27 a.m. demanding a copy of CSL's teach out plan filed with the ABA. *See* DeVito Decl., Ex. 4. Mr. Zibel evidently was not pleased by the speed of Mr. Currier's response. At 6:30 p.m., Mr. Currier responded, "Not ignoring you. In California today …. I'll respond tomorrow when I'm back in the office." *Id*.

Three days later, on February 17, 2017, Mr. Zibel emailed Mr. Currier again, stating that "[I]t is my understanding that the Charlotte School of Law has filed a teach out plan with the ABA that involves using the Florida Coastal School of Law as a teach out partner in some fashion." *Id*. Mr. Zibel ordered Mr. Currier to provide the teach out plan, invoking "the DOE's authorities, including the authority at 34 CFR 602.27(a)(7)." *Id*.

On February 21, 2017, Mr. Currier forwarded the materials to Mr. Zibel, acknowledging the latter's "request and directive." *Id*. On March 2, 2017, Mr. Zibel followed up with Mr. Currier, requesting a phone conversation, which Mr. Currier agreed to have. *Id*. The substance of their discussion is not known at this time.

On June 26, 2017, Mr. Zibel again invoked his governmental authority to demand of Mr. Currier a copy of the ABA's June 2017 decision on CSL. *Id*. Although the ABA's decision was not a public document, Mr. Zibel instructed the ABA not to inform CSL of the DOE's demand for the decision. *Id*. Mr. Currier on July 6, 2017, complied, stating that "[w]e acknowledge and will comply with the directives included in your email." *Id*.

These communications, obtained through FOIA, reveal that Mr. Zibel used his authority as a DOE official to secretly insert himself in the ABA's process, and that the ABA complied with Mr. Zibel's orders, including his directive that the ABA not inform the school of his interest and involvement. Plaintiffs are entitled to discovery from the ABA on the communications between the ABA and Mr. Zibel (or any other DOE official) concerning Coastal and the other InfiLaw schools. Pending that discovery, consideration of summary judgment is premature.

The ABA argues that "Coastal has not made any showing that would entitle it to discovery" on Coastal's Fifth Amendment claim. Mot. 30. But it is not Coastal's burden to make such a showing. Rule 26(b)(1) entitles Coastal to discovery. In any event, Mr. Zibel's social media posting and his emails with Mr. Currier constitute a sufficient showing for discovery, even if such a showing were necessary.

## CONCLUSION

This Court should deny the motion for summary judgment. In the alternative, this Court should grant relief under Rule 56(d) by (1) denying or deferring consideration of the summary judgment motion to allow Plaintiffs a suitable period of time and opportunity to engage in discovery, and (2) compelling the ABA to produce all nonprivileged documents responsive to Plaintiff's outstanding Requests.

Respectfully submitted,

/s/ H. Christopher Bartolomucci
Mark G. Alexander
Florida Bar No. 434078
ALEXANDER DEGANCE BARNETT P.A.
1500 Riverside Avenue
Jacksonville, Florida 32204
(904) 345-3277
mark.alexander@adblegal.com

Paul D. Clement*
H. Christopher Bartolomucci*
KIRKLAND & ELLIS LLP
655 15th Street, NW
Washington, DC 20005
(202) 879-5000
paul.clement@kirkland.com
cbartolomucci@kirkland.com
*Admitted *pro hac vice*

*Counsel for Plaintiffs Florida Coastal School of
Law, Inc. and InfiLaw Corporation*

Dated: November 29, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2018, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send notification of the filing to all counsel of record in this case.

/s/ H. Christopher Bartolomucci
H. Christopher Bartolomucci